1      UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3

4  HON. RALPH ZAREFSKY, U.S. MAGISTRATE JUDGE PRESIDING

5

6

7  UNITED STATES OF AMERICA,        )
                                    )
8              PLAINTIFF,           )
                                    )   CASE NO. 10-01524M
9                                   )
           VS.                      )
10                                  )
   MICHAEL LEE WHITE,               )
11                                  )       (1:56 P.M.)
               DEFENDANT.           )
12 _____ )

13

14
                    IDENTITY HEARING
15

16              LOS ANGELES, CALIFORNIA

17                 JULY 1, 2010

18

19

20 DEPUTY CLERK:              I. BERNAL

21 TRANSCRIBED BY:            HUNTINGTON COURT REPORTERS
                              AND TRANSCRIPTION INC.
22                            1450 W.COLORADO BOULEVARD
                              PASADENA, CA 91105
23                            (626) 792-7250

24

25 PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
                                                    1

1    <u>APPEARANCES</u>

2

3    FOR THE PLAINTIFF:

4            UNITED STATES ATTORNEY
             BY:  NICHOLAS TRUTANICH, AUSA
5            CRIMINAL DIVISION - U.S. COURTHOUSE
             312 NORTH SPRING STREET, 12TH FLOOR
6            LOS ANGELES, CALIFORNIA  90012
             (213) 894-2434
7

8

9    FOR THE DEFENDANT:

10           LAW OFFICES OF MICHAEL V. SEVERO
             BY:  MICHAEL V. SEVERO
11           70 SOUTH LAKE STREET, SUITE 945
             PASADENA, CALIFORNIA 91101
12           (626) 844-6400

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                              2

```
1            LOS ANGELES, CALIFORNIA, THURSDAY, JULY 1, 2010

2

3            THE COURT:  LET'S CALL THE CALENDAR.

4            THE CLERK:  CALLING CASE NO. 10-01524M, UNITED

5    STATES OF AMERICA VERSUS MICHAEL LEE WHITE.  COUNSEL,

6    PLEASE MAKE YOUR APPEARANCES.

7            MR. TRUTANICH:  GOOD AFTERNOON, YOUR HONOR.

8    NICHOLAS TRUTANICH ON BEHALF OF THE UNITED STATES.  HERE

9    AT COUNSEL TABLE WITH ME IS STEVEN BELL, A SPECIAL AGENT

10   FROM THE DRUG ENFORCEMENT ADMINISTRATION.

11           THE COURT:  GOOD AFTERNOON.

12           MR. SEVERO:  AND GOOD AFTERNOON, YOUR HONOR.

13   MICHAEL SEVERO APPEARING ON BEHALF OF THE DEFENDANT, MR.

14   WHITE, WHO IS PRESENT, IN CUSTODY.

15           THE COURT:  GOOD AFTERNOON.

16                 (CELL PHONE RINGING.)

17           MR. SEVERO:  SORRY, JUDGE. IT'S ONE OF THOSE

18   THINGS.  IT DOESN'T WANT TO DO IT.  THANK YOU.

19           THE COURT:  ALL RIGHT.  ANYBODY ELSE WHO HAS A

20   CELL PHONE THAT NEEDS TO BE SILENCED, PLEASE SILENCE IT.

21           ALL RIGHT, WE'RE HERE FOR AN IDENTITY HEARING.

22   YOU READY TO PROCEED, MR. TRUTANICH?

23           MR. TRUTANICH:  YES, YOUR HONOR, I AM.  I HAVE

24   AN EXHIBIT BINDER THAT HAS BEEN HIGHLIGHTED FOR YOUR

25   HONOR, AS WELL AS THE EXHIBIT BINDER FOR YOUR CLERK.  I
```

3

1   BELIEVE THAT -- WE'RE COMPILING THE FINAL EXHIBIT

2   STICKERS, AND THEY WILL BE PROVIDED TO THE CLERK AT THE

3   END OF THE CALENDAR TODAY IF THAT'S APPROPRIATE WITH THE

4   COURT.

5           THE COURT:  I JUST DON'T WANT THINGS MIXED UP.

6           MR. TRUTANICH:  VERY WELL, YOUR HONOR.  I

7   HAVE -- I HAVE WITH ME A HIGHLIGHTED COPY OF THE BINDER IN

8   FRONT OF YOU, WHICH MIGHT MAKE YOU FOLLOWING ALONG THROUGH

9   THE PROCEEDING A BIT EASIER.

10          THE COURT:  HAVE YOU SHOWN IT TO THE DEFENSE?

11          MR. TRUTANICH:  YOUR HONOR, HE HAS A HIGHLIGHTED

12  COPY AS WELL.

13          THE COURT:  ALL RIGHT.  YOU CAN PASS IT TO THE

14  CLERK.

15          MR. TRUTANICH:  YES, SIR.  MAY I APPROACH?

16          THE COURT:  YES.

17          MR. TRUTANICH:  THEN MAY I INQUIRE AS TO WHETHER

18  THE COURT CLERK ALSO HAS A COPY OF THE BINDER, OR WILL SHE

19  GIVE YOU YOUR HONOR'S?

20          THE COURT:  ALL RIGHT.  THE ORIGINALS OF THE

21  EXHIBITS GO TO THE CLERK.

22          MR. TRUTANICH:  YES, YOUR HONOR.

23          THE COURT:  TO THE EXTENT THEY'RE TO BE PLACED

24  IN FRONT OF THE WITNESS, THE CLERK WILL USE THOSE.  SO

25  THAT'S WHAT THE CLERK WILL HAVE WHEN YOU DELIVER THEM.

                                                          4

1      MR. TRUTANICH:  YES, YOUR HONOR.

2      THE CLERK:  IS THAT THE BINDER YOU WERE TALKING

3  ABOUT?

4      MR. TRUTANICH:  THAT WILL GO TO THE COURT.

5      THE CLERK:  OKAY.

6      MR. TRUTANICH:  YOUR HONOR, BEFORE CALLING MY

7  FIRST WITNESS, IF I MAY, I'D REQUEST THE COURT TAKE

8  JUDICIAL NOTICE OF THE INDICTMENT AS WELL AS THE FACT THAT

9  AT THE INITIAL APPEARANCE, THE DEFENDANT ADMITTED HIS TRUE

10  NAME AS BEING MICHAEL LEE WHITE.

11      BASED ON THAT, YOUR HONOR, AND BASED ON A FEW

12  CASES THAT THE GOVERNMENT HAS PROVIDED TO THE COURT BEFORE

13  THE HEARING, THERE'S A PRESUMPTION AND AN INFERENCE THAT

14  THE COURT MAY DRAW FROM THAT ADMISSION, AND THAT IS

15  CHARLIE WONG V. S LAW 6 F2, 1925 (NINTH CIRCUIT).

16      ALSO, YOUR HONOR, I'D ASK THAT THE COURT TAKE

17  JUDICIAL NOTICE OF THE CONVICTIONS LISTED IN EXHIBIT 1 OF

18  THE BINDER.  SPECIFICALLY, THE CONVICTION FOR DRUGS ON

19  PAGE FOUR OF EXHIBIT 1.

20      THE COURT:  ALL RIGHT.  WELL, JUST A MOMENT.

21  LET'S DO ONE THING AT A TIME.

22      MR. TRUTANICH:  YES, YOUR HONOR.

23      THE COURT:  AS TO THE INDICTMENT -- THE

24  INDICTMENT YOU DON'T NEED TO TAKE JUDICIAL NOTICE OF.

25  THE INDICTMENT IS THE INDICTMENT.

5

1          AS TO THE DEFENDANT'S STATEMENT THAT HIS TRUE

2    NAME IS MICHAEL LEE WHITE, IS THERE ANY OBJECTION TO THE

3    COURT'S TAKING JUDICIAL NOTICE OF THAT?

4          MR. SEVERO:  NOT TO THAT.

5          THE COURT:  ALL RIGHT.  NOW, LET'S MOVE AS TO --

6    MOVE TO THE NEXT QUESTION, WHICH IS EXHIBIT 1 -- YES?

7          MR. TRUTANICH:  YES, YOUR HONOR.  THIS IS A

8    PRINTOUT OF DEFENDANT'S CRIMINAL HISTORY FROM LAPD OFFICER

9    TIM PIERCE.  THE GOVERNMENT WOULD ASK THAT THE COURT TAKE

10   JUDICIAL NOTICE OF ALL OF EXHIBIT 1.

11         MR. SEVERO:  THERE IS AN OBJECTION TO THAT.  I

12   DON'T BELIEVE THERE'S ANY RELEVANCY TO A -- A RAP SHEET IN

13   AN IDENTITY HEARING WHERE THE ONLY QUESTION IS WHETHER THE

14   PERSON BEFORE THE COURT IS THE SAME PERSON INDICTED IN THE

15   DISTRICT OF ARIZONA.

16         THE COURT:  I DON'T KNOW IF THERE'S RELEVANCE OR

17   NOT, SO I'LL RESERVE RULING ON THAT.

18         MR. TRUTANICH:  VERY WELL, YOUR HONOR.  WITH

19   RESPECT TO INDIVIDUAL CONVICTIONS, SPECIFICALLY THE

20   CONVICTION OF A FALSE ID TO A POLICE OFFICER ON PAGE THREE

21   AND THE DRUG CONVICTION ON PAGE FOUR, WILL THE COURT BE

22   TAKING JUDICIAL NOTICE OF THOSE CONVICTIONS?

23         MR. SEVERO:  IT GOES TO THE SAME OBJECTION.  I

24   THINK THE COURT JUST RESERVED RULING ON ALL OF EXHIBIT 1

25   UNTIL WE --

                                                      6

1          THE COURT:  I'M NOT GOING TO TAKE JUDICIAL

2    NOTICE AT THIS POINT.  I'M NOT RULING AGAINST IT; I'M JUST

3    SAYING I'M NOT DOING IT YET.

4          MR. TRUTANICH:  YES, YOUR HONOR.  VERY WELL.  AT

5    THIS TIME THE GOVERNMENT WOULD THEN CALL THE SPECIAL

6    AGENT, STEVEN BELL.

7          THE COURT:  ALL RIGHT.

8             (WITNESS SWORN BY THE CLERK.)

9          THE COURT:  THANK YOU.  PLEASE BE SEATED, AND IF

10   YOU WILL, STATE AND SPELL YOUR NAME FOR THE RECORD.

11         MR. BELL:  MY NAME IS STEVEN BELL, B-E-L-L.

12

13                         EXAMINATION

14   BY MR. TRUTANICH:

15         Q    MR. BELL, WHERE DO YOU WORK?

16         A    I WORK FOR THE DRUG ENFORCEMENT

17   ADMINISTRATION AS A SPECIAL AGENT.

18         Q    HOW LONG HAVE YOU WORKED THERE?

19         A    I'VE WORKED THERE APPROXIMATELY SIX YEARS.

20         THE COURT:  JUST A MOMENT.  ARE WE PICKING UP

21   MR. TRUTANICH?

22         THE CLERK:  WE WERE.  DO YOU WANT TO SPEAK A

23   LITTLE MORE INTO THE MICROPHONE?

24         MR. TRUTANICH:  IS THAT BETTER, YOUR HONOR?

25         THE COURT:  ALL RIGHT.  GO AHEAD.

                                                            7

1    BY MR. TRUTANICH:

2              Q    HOW LONG HAVE YOU WORKED THERE?

3              A    I'VE WORKED FOR THE DEA FOR APPROXIMATELY

4    SIX YEARS.

5              Q    AND BEFORE WORKING AT THE DEA, WHERE DID

6    YOU WORK?

7              A    I WAS A POLICE OFFICER IN THE CITY OF

8    AURORA, COLORADO POLICE DEPARTMENT FOR APPROXIMATELY SIX

9    YEARS.

10             Q    BEFORE THAT?

11             A    I WAS A POLICE OFFICER IN THE CITY OF

12   NASHVILLE, TENNESSEE FOR APPROXIMATELY SEVEN YEARS.

13             Q    AS A STATE POLICE OFFICER IN NASHVILLE AND

14   IN COLORADO, DID YOU HAVE AN OPPORTUNITY TO INVESTIGATE

15   DRUG TRAFFICKING CRIMES?

16             A    YES, SIR.

17             Q    AND AS A DEA AGENT, HAVE YOU INVESTIGATED

18   DRUG TRAFFICKING CRIMES?

19             A    YES, SIR.

20             Q    WHERE IS IT THAT YOU ARE A DEA AGENT?

21             A    I AM CURRENTLY ASSIGNED TO THE PHOENIX

22   FIELD DIVISION, PHOENIX, ARIZONA.

23             Q    ARE YOU FAMILIAR WITH THE CASE INDICTED IN

24   THE DISTRICT OF ARIZONA, CASE NO. 10 CR-801 NAMING THE

25   FOLLOWING DEFENDANTS:

                                                           8

```
 1              RICKY COLLY (PHONETIC), AKA "SLICK"; ANTHONY
 2    JACKSON, AKA "CHRISTOPHER VANCE"; BRIAN BROADWAY; GENERO
 3    (PHONETIC) HIGGINS, AKA "DUCK"; SYLVESTER THOMAS, AKA --
 4    EXCUSE ME, GENERO HIGGINS, AKA "BO"; SYVESTER THOMAS, AKA
 5    "DUCK"; AND MICHAEL LEE WHITE, AKA "SKIP"?
 6         A    YES, SIR.
 7         Q    ARE YOU OFFICIALLY ASSIGNED TO THAT CASE?
 8         A    YES, SIR.
 9         Q    WERE YOU PRESENT DURING THE ARREST OF ANY
10    ONE OF THOSE DEFENDANTS THAT I JUST MENTIONED IN THAT
11    INDICTMENT?
12         A    YES, SIR.
13         Q    WHICH ONES?
14         A    I WAS PRESENT FOR THE ARREST OF MICHAEL
15    WHITE, WHO IS SITTING OVER THERE AT THE TABLE, AND ALSO OF
16    RICKY COLLY.
17              MR. TRUTANICH:  YOUR HONOR, WOULD THE COURT LET
18    THE RECORD REFLECT THAT THE WITNESS HAS IDENTIFIED A
19    PERSON WHO HE ARRESTED AND WHO HE KNOWS AS MICHAEL WHITE.
20              THE COURT:  I THINK THAT'S WHAT HE SAID.  VERY
21    WELL.
22    BY MR. TRUTANICH:
23         Q    NOW DURING THE ARREST -- WHEN WAS THE
24    ARREST?
25         A    LAST WEDNESDAY, JUNE 23RD.
```

9

1          Q      AND DURING THE ARREST, DID THE PERSON

2    SITTING AT DEFENSE COUNSEL TABLE TELL YOU WHAT HIS NAME

3    WAS?

4          A      YES, SIR.

5          Q      WHAT DID HE SAY?

6          A      MICHAEL WHITE.

7          Q      AND DID YOU HEAR HIM ANSWER TO ANY

8    MONIKERS?

9          A      YES, SIR.

10         Q      WHICH MONIKERS DID YOU HEAR HIM ANSWER?

11         A      SKIP.

12         Q      NOW, HOW DID YOUR TEAM FIRST LEARN ABOUT

13   MICHAEL WHITE?

14         A      BACK IN MARCH OF 2008, SPECIAL AGENT

15   KIMBERLY ROBERTS OF DEA IN THE GLENDALE NARCOTICS TASK

16   FORCE EXECUTED A SEARCH WARRANT IN SCOTTSDALE, ARIZONA.

17         THE COURT:  EXCUSE ME, IS THAT THE GLENDALE,

18   ARIZONA OR GLENDALE, CALIFORNIA?

19         THE WITNESS:  EXCUSE ME, SIR, IT'S GLENDALE,

20   ARIZONA.

21         THE COURT:  ALL RIGHT.

22   BY MR. TRUTANICH:

23         Q      DURING THAT -- WILL YOU PLEASE TURN TO

24   EXHIBIT NO. 22 -- EXCUSE ME, EXHIBIT NO. 2.

25         THE COURT:  JUST A MOMENT.  HAVE YOU GIVEN THE

                                                              10

```
 1   ORIGINAL EXHIBITS TO THE CLERK?
 2           MR. TRUTANICH:  YES, YOUR HONOR.  I BELIEVE
 3   THERE ARE TWO BINDERS WITH THE COURT.
 4           THE COURT:  AND IS ONE OF THEM THE ORIGINAL?
 5           MR. TRUTANICH:  YES, YOUR HONOR.
 6           THE COURT:  I'M GOING TO PASS BOTH BINDERS TO
 7   THE CLERK.  THE CLERK'S GOING TO DELIVER THEM TO YOU, AND
 8   YOU'RE GOING TO IDENTIFY TO THE CLERK WHICH ONE ARE THE
 9   ORIGINALS.
10           MR. TRUTANICH:  VERY WELL, YOUR HONOR.
11           YOUR HONOR, THE ONE IN MY RIGHT HAND NOW, THAT'S
12   THE CLERK'S COPY.
13           THE COURT:  JUST GIVE IT TO HER.  ALL RIGHT.
14   ALL RIGHT, SO THE ORIGINAL OF EXHIBIT WHAT?
15           MR. TRUTANICH:  EXHIBIT 2, YOUR HONOR.
16           THE COURT:  ALL RIGHT.
17           THE CLERK:  THE BINDER CONTAINING THE ORIGINAL
18   OF THE EXHIBIT, EXHIBIT 2, IS IN FRONT OF THE WITNESS.
19           MR. SEVERO:  MAY I INQUIRE IF THE ORIGINAL IS A
20   PHOTOCOPY OF A CARD, OR IS IT THE CARD ITSELF?
21           THE COURT:  YOU HAVEN'T SEEN THE ORIGINALS?
22           MR. SEVERO:  WELL, I -- MY SUSPICION IS THAT THE
23   ORIGINAL IS NOTHING MORE THAN ANOTHER COPY.
24           MR. TRUTANICH:  THE -- THE CARD WAS SEIZED, YOUR
25   HONOR.  THE GOVERNMENT CAN PROFFER THAT THE WITNESS WILL
```

11

1   TESTIFY THAT THE CARD WAS SEIZED.

2           THE COURT:  WHY DON'T YOU JUST RATHER THAN

3   PROFFER, LET'S GET SOME TESTIMONY FROM THE WITNESS.

4           MR. TRUTANICH:  VERY WELL.

5       Q    NOW, DO YOU RECOGNIZE EXHIBIT NO. 2?

6       A    YES, SIR, I DO.

7       Q    HOW IS IT THAT YOU RECOGNIZE IT?

8       A    THIS HERTZ NUMBER ONE GOLD CLUB CARD WAS

9   RECOVERED AT THE SEARCH WARRANT IN SCOTTSDALE, ARIZONA.

10      Q    WERE YOU PRESENT DURING THAT SEARCH?

11      A    NO, SIR.

12      Q    WHO TOLD YOU THAT IT WAS RECOVERED THERE?

13      A    SPECIAL AGENT KIMBERLY ROBERTS.

14          MR. TRUTANICH:  AND, YOUR HONOR, AT THIS TIME

15   THE GOVERNMENT WOULD MOVE TO ADMIT --

16          THE COURT:  CAN WE HAVE A DESCRIPTION WHAT

17   EXHIBIT 2 IS?

18   BY MR. TRUTANICH:

19      Q    WHAT IS EXHIBIT NO. 2?

20      A    EXHIBIT NO. 2 IS A PHOTOSTATIC COPY OF

21   HERTZ NUMBER ONE GOLD CLUB CARD IN THE NAME OF MICHAEL L.

22   WHITE.  IT HAS AN ACCOUNT NUMBER ON IT AND AN EXPIRATION

23   DATE.

24      Q    AND APPROXIMATELY WHEN WAS THIS EXHIBIT --

25   OR THE CARD PICTURED IN THIS EXHIBIT SEIZED?

12

1           MR. SEVERO:  OBJECTION.  THAT CALLS FOR A

2    CONCLUSION; NO FOUNDATION.

3           THE COURT:  OVERRULED.

4           THE WITNESS:  MARCH OF 2008.

5    BY MR. TRUTANICH:

6           Q    WHAT OTHER EVIDENCE WAS SEIZED IN THE HOUSE

7    AT THE TIME THAT THIS CARD PICTURED IN EXHIBIT 2 WAS

8    SEIZED?

9           MR. SEVERO:  OBJECTION.  NO FOUNDATION.

10          THE COURT:  OVERRULED.

11          THE WITNESS:  APPROXIMATELY 950 POUNDS OF

12   MARIJUANA AND APPROXIMATELY, I BELIEVE, $16,000.00 CASH.

13   BY MR. TRUTANICH:

14          Q    AND HOW IS IT THAT YOU KNOW THAT?

15          A    SPECIAL AGENT KIMBERLY ROBERTS INFORMED ME.

16          Q    FROM -- FROM THE HOUSE WAS THERE -- DID

17   YOUR TEAM CONDUCT ANY OTHER SEARCH WARRANTS FROM THE

18   DOCUMENTS AND EVIDENCE SEIZED FROM THAT HOUSE?

19          A    YES, SIR.  ALSO INSIDE THE HOUSE WERE

20   DOCUMENTS THAT INDICATED THAT --

21          MR. SEVERO:  OBJECTION; NOT THE BEST EVIDENCE.

22          THE COURT:  I'M SORRY.  SAY IT AGAIN.

23          THE WITNESS:  NOT THE BEST EVIDENCE, AND IT'S

24   HEARSAY.  IT'S THE BEST EVIDENCE RULE.  HE'S TALKING ABOUT

25   DOCUMENTS THAT WE HAVE NO -- THEY'RE NOT BEFORE THE COURT.

                                                          13

1        THE COURT:  WELL, THE QUESTION.  YOU KNOW I --

2        MR. TRUTANICH:  YOUR HONOR, MAY I BE HEARD?

3        MR. SEVERO:  IT MAY ALSO BE IRRELEVANT.

4        THE COURT:  OKAY.  JUST A MOMENT; JUST A MOMENT.

5   WILL YOU RE-ASK THE QUESTION, BECAUSE I DIDN'T THINK HE

6   WAS ANSWERING THE QUESTION YOU ASKED.  SO LET'S START WITH

7   THAT.

8   BY MR. TRUTANICH:

9        Q    FROM THE -- WHAT OTHER EVIDENCE DID YOU

10  FIND IN THE HOUSE?

11       A    PAPERWORK GIVING THE LOCATION OF A NEARBY

12  WAREHOUSE.

13       MR. SEVERO:  PAPERWORK.  AFTER PAPERWORK,

14  EVERYTHING IS NON-RESPONSIVE, LACKS FOUNDATION, HEARSAY,

15  AND NOT THE BEST EVIDENCE.

16       THE COURT:  WHAT KIND OF PAPERWORK?

17       THE WITNESS:  YOUR HONOR, I DON'T RECALL THE

18  TYPE OF PAPERWORK THAT WAS FOUND AT THE LOCATION.

19       THE COURT:  SUSTAINED.

20       MR. TRUTANICH:  YOUR HONOR, MAY I BE HEARD ON

21  THE OBJECTION?

22       THE COURT:  NO, JUST MOVE ON TO THE NEXT

23  QUESTION.

24  BY MR. TRUTANICH:

25       Q    WHAT HAPPENED AFTER THE SEARCH WARRANT AT

14

1   THE HOUSE?

2          A    A SECONDARY SEARCH WARRANT WAS EXECUTED A

3   DAY LATER AT A NEARBY WAREHOUSE.

4          Q    AND WHAT WAS FOUND DURING THAT SEARCH

5   WARRANT?

6          A    APPROXIMATELY 1,500 POUNDS OF MARIJUANA.

7          Q    AFTER MAKING THE SEIZURE OF THE $16,000.00

8   IN CASH, THE 960 POUNDS OF MARIJUANA, AND THE 1500 POUNDS

9   OF MARIJUANA, DID YOUR TEAM DO ANY FOLLOW-UP INVESTIGATION

10  RELATED TO THIS CARD PICTURED IN EXHIBIT NO. 2?

11         A    YES, SIR.

12         Q    WHAT WAS DONE?

13         A    SPECIAL AGENT KIMBERLY ROBERTS SERVED AN

14  ADMINISTRATIVE SUBPOENA TO HERTZ AND RECEIVED SUBSCRIBER

15  INFORMATION -- YOU KNOW, OF THIS CARD.

16         Q    AND DID SHE TELL YOU WHAT INFORMATION SHE

17  LEARNED FROM THAT RESPONSE TO THE SUBPOENA?

18         A    YES, SIR.

19         Q    AND WHAT INFORMATION DID SHE LEARN?

20         MR. SEVERO:  OBJECTION.  IT'S MULTIPLE LAYERS OF

21  HEARSAY.  ROBERTS TOLD THIS AGENT THAT SHE LEARNED

22  SOMETHING FROM SOME DOCUMENTS THAT SHE GOT.  I BELIEVE

23  THAT WHILE THE COURT IS ALLOWED TO -- THAT WHILE HEARSAY

24  EVIDENCE IS ALLOWED IN A HEARING LIKE THIS, THESE MULTIPLE

25  LAYERS OF HEARSAY ARE FAR TOO UNTRUSTWORTHY TO BE

                                                    15

```
 1    ADMISSIBLE.
 2              THE COURT:  OVERRULED.
 3              THE WITNESS:  SIR, COULD I GET YOU TO RE-ASK THE
 4    QUESTION?
 5    BY MR. TRUTANICH:
 6         Q    WHAT INFORMATION DID YOU LEARN FROM SPECIAL
 7    AGENT ROBERTS ABOUT THE INFORMATION PROVIDED TO HER IN
 8    RESPONSE TO THE SUBPOENA SHE SENT TO HERTZ?
 9         A    THE INFORMATION THAT ROBERTS -- AGENT
10    ROBERTS PROVIDED ME WAS THAT THE SUBSCRIBER OF THIS CARD
11    WAS, IN FACT, MICHAEL LEE WHITE, 200 NORTH GLENDORA
12    AVENUE, LA PUENTE, CALIFORNIA.
13         Q    AT THIS TIME, WILL YOU PLEASE TURN TO
14    EXHIBIT NO. 3.  DO YOU RECOGNIZE THIS EXHIBIT?
15         A    YES, SIR, I DO.
16         Q    HOW DO YOU RECOGNIZE IT?
17         A    IT IS A COPY OF CALIFORNIA DEPARTMENT OF
18    MOTOR VEHICLES DRIVER'S LICENSE IN THE NAME OF MICHAEL LEE
19    WHITE, LISTING THE ADDRESS OF 200 NORTH GLENDORA AVENUE,
20    131, LA PUENTE, CALIFORNIA.
21              MR. TRUTANICH:  YOUR HONOR, AT THIS TIME THE
22    GOVERNMENT WOULD MOVE TO ADMIT BOTH EXHIBIT 2 AND EXHIBIT
23    3.
24              THE COURT:  COUNSEL?
25              MR. SEVERO:  OBJECTION TO NUMBER 2.  I DON'T
```

16

1  BELIEVE IT'S PROPERLY AUTHENTICATED; NO FOUNDATION.   I

2  HAVE NO OBJECTION TO NUMBER 3.

3          THE COURT:  ALL RIGHT.  NUMBER 3 IS ADMITTED.

4  THE OBJECTIONS TO NUMBER 2 ARE OVERRULED, AND IT IS

5  ADMITTED AS WELL.

6  BY MR. TRUTANICH:

7          Q    WHAT IS THE NAME LISTED ON EXHIBIT NO. 3?

8          A    MICHAEL LEE WHITE.

9          Q    AND AGAIN, YOU SAID THE ADDRESS WAS 200

10  GLENDORA; IS THAT RIGHT?

11          A    200 NORTH GLENDORA AVENUE, 131, LA PUENTE,

12  CALIFORNIA.

13          Q    DO YOU RECOGNIZE THE PERSON PICTURED IN

14  EXHIBIT NO. 3 IN COURT TODAY?

15          A    YES, SIR, I DO.  SITTING NEXT TO DEFENSE

16  COUNSEL.

17          Q    NOW IS 200 NORTH GLENDORA -- IS THAT

18  RESIDENCE A BUSINESS, OR IS THAT -- IS THAT A RESIDENCE?

19          A    THAT IS A BUSINESS.

20          Q    SO THAT LOCATION IS A BUSINESS.

21          A    YES, SIR.

22          Q    AND WHAT TYPE OF BUSINESS IS IT?

23          A    IT IS A BAIL BONDING BUSINESS.

24          Q    WAS THIS THE ADDRESS THAT THE DEFENDANT WAS

25  ARRESTED ON LAST WEEK ON JUNE 23RD?

17

```
 1             A     NO, SIR.

 2             Q     WHERE WAS HE ARRESTED?

 3             A     HE WAS ARRESTED IN RIVERSIDE, CALIFORNIA,

 4    NEAR 199 -- OR 17 -- 19776 SAN LUIS REY, IN RIVERSIDE.

 5             Q     AND WHY IS IT THAT YOU SURVEILLED THAT

 6    ADDRESS?

 7             A     S.A. KIMBERLY ROBERTS HAD DEVELOPED

 8    INFORMATION THAT THIS LOCATION WAS OUR BEST CHANCE OF

 9    SUCCESS OF LOCATING MR. WHITE FOR APPREHENSION ON

10    WEDNESDAY.

11             Q     AND DURING YOUR PARTICIPATION IN THE

12    INVESTIGATION OF THIS CASE, HAVE YOU LEARNED WHETHER THE

13    PHOTOGRAPH DEPICTED IN EXHIBIT NO. 3 WAS SHOWN TO

14    CONFIDENTIAL INFORMANTS OR COOPERATING SOURCES?

15             A     YES, SIR.

16             Q     AND WHEN THAT PHOTOGRAPH DEPICTED IN

17    EXHIBIT NO. 3 WAS SHOWN TO THOSE SOURCES, DID THEY

18    IDENTIFY THE PERSON IN THIS PICTURE AS A PERSON INVOLVED

19    IN DRUG TRAFFICKING WITH THEM?

20             MR. SEVERO:  LEADING, SUGGESTIVE.

21             THE COURT:  JUST A MOMENT.  I'M SORRY?

22             MR. SEVERO:  LEADING, SUGGESTIVE, AND LACKING

23    FOUNDATION AS TO THIS WITNESS'S KNOWLEDGE OF WHAT ANY

24    CONFIDENTIAL INFORMANT MAY HAVE SAID.

25             THE COURT: SUSTAINED.
                                                            18
```

1    BY MR. TRUTANICH:

2         Q    HAVE YOU REVIEWED REPORTS CONTAINING

3    SUMMARIES OF MEETINGS WITH CONFIDENTIAL INFORMANTS AND

4    SOURCES?

5         A    YES, SIR.

6         Q    WHAT -- HAVE YOU TALKED TO SPECIAL AGENT

7    ROBERTS ABOUT THOSE MEETINGS?

8         A    YES, SIR.

9         Q    AND WHAT IS IT THAT YOU LEARNED FROM THOSE

10   MEETINGS WITH RESPECT TO THE DEFENDANT'S DRUG TRAFFICKING?

11        MR. SEVERO:  SAME OBJECTION.  I DON'T --

12        THE COURT:  WHAT IS THE OBJECTION?

13        MR. SEVERO:  NO FOUNDATION.  IT'S JUST THE SAME

14   QUESTION AS BEFORE DISGUISED --

15        THE COURT:  OKAY.  IT'S OVERRULED.

16        THE WITNESS:  I'M SORRY, SIR, COULD YOU ASK THE

17   QUESTION AGAIN?

18   BY MR. TRUTANICH:

19        Q    YES.  WHAT IS IT THAT YOU LEARNED THROUGH

20   YOUR CONVERSATIONS WITH SPECIAL AGENT ROBERTS ABOUT WHAT

21   THE CONFIDENTIAL INFORMANTS OR COOPERATING SOURCES TOLD

22   HER WITH RESPECT TO THE DEFENDANT'S DRUG TRAFFICKING?

23        MR. SEVERO:  THAT'S A DIFFERENT QUESTION, AND IT

24   LACKS FOUNDATION.  IT'S HEARSAY AND -- THAT'S IT.

25        THE COURT:  ALL RIGHT.  THAT'S OVERRULED.

                                                    19

1            THE WITNESS:  AGENT ROBERTS NOTIFIED ME THAT THE

2   CONFIDENTIAL SOURCES IDENTIFIED THIS PHOTOGRAPH AS

3   BELONGING TO SKIP.

4   BY MR. TRUTANICH:

5            Q    AND DID THEY SAY WHETHER OR NOT SKIP WAS

6   INVOLVED IN DRUG TRAFFICKING WITH THEM?

7            A    YES, SIR.

8            MR. SEVERO:  OBJECTION, CALLS FOR A CONCLUSION.

9            THE COURT:  OVERRULED.

10            THE WITNESS:  YES, SIR.

11            Q  BY MR. TRUTANICH:  AND WHAT DID THEY SAY

12   ABOUT HIM BEING INVOLVED IN THE DRUG TRAFFICKING?  WAS HE

13   OR WAS HE NOT?

14            A    HE WAS INVOLVED IN DRUG TRAFFICKING.

15            Q    WOULD YOU PLEASE TURN TO EXHIBIT NO. 4.  DO

16   YOU RECOGNIZE EXHIBIT NO. 4?

17            A    YES, SIR.

18            Q    HOW IS IT THAT YOU RECOGNIZE EXHIBIT NO. 4?

19            A    IT IS AN INTERNET SITE THAT I LOOKED UP FOR

20   200 NORTH GLENDORA AVENUE, LA PUENTE, CALIFORNIA.

21            Q    AND DO YOU KNOW WHO JIMMY FLORES IS THROUGH

22   YOUR INVESTIGATION IN THIS CASE?

23            A    YES, SIR.

24            Q    WHO IS HE?

25            A    HE IS REFERRED TO AS THE FATHER OF MICHAEL

                                                          20

1   WHITE.  I DON'T BELIEVE HE IS THE BIOLOGICAL FATHER BUT IS

2   REFERRED TO AS THE FATHER.

3          Q    AND HOW IS IT THAT YOU KNOW THAT?

4          A    MICHAEL WHITE TOLD US THAT LAST WEDNESDAY.

5          Q    AND DO YOU KNOW WHETHER THE INFORMATION

6   ABOUT KEY'S BAILBONDS AND THE ADDRESS AND THE PHONE NUMBER

7   IS ACCURATE?

8          A    I BELIEVE THE PHONE NUMBER IS ACCURATE.  I

9   CALLED THAT THIS MORNING, AND THE SUBJECT ON THE OTHER END

10  OF THE PHONE ANSWERED KEY'S BAILBONDS.

11         Q    WOULD YOU PLEASE -- WOULD YOU PLEASE TURN

12  TO EXHIBITS 5 AND 6.

13         THE COURT:  LET'S DO ONE AT A TIME.

14         MR. TRUTANICH:  YES, YOUR HONOR.

15         THE COURT:  UNLESS YOU'RE COMPARING THEM.

16         MR. TRUTANICH:  YES, YOUR HONOR.  EXHIBIT 5

17  FIRST.

18         THE WITNESS:  YES, SIR.

19  BY MR. TRUTANICH:

20         Q    AND DO YOU RECOGNIZE IT?

21         A    YES, SIR.

22         Q    HOW DO YOU RECOGNIZE IT?

23         A    IT IS A PRINTOUT OF A CALIFORNIA

24  REGISTRATION ON A 2005 LAMBORGHINI.

25         MR SEVERO:  I THINK THE CONTENT OF THE

21

1    INFORMATION IS IRRELEVANT IN THIS CASE.

2           THE COURT:  ALL HE ASKED HIM WAS HOW HE

3    RECOGNIZED IT.

4           MR. SEVERO:  OKAY.  BUT IT'S A PRINTOUT OF A

5    REGISTRATION.  THEN IT'S NON-RESPONSIVE AFTER THAT WITHOUT

6    GETTING INTO THE CONTENT OF THE ACTUAL DOCUMENT.

7           THE COURT:  ALL RIGHT.  IT IS A PRINTOUT OF A

8    REGISTRATION.  WHAT'S YOUR NEXT QUESTION?

9    BY MR. TRUTANICH:

10          Q    AND HOW IS IT THAT YOU OBTAINED THIS

11   REGISTRATION PRINTOUT?

12          A    OBTAINED IT FROM SPECIAL AGENT AMIN FARHAD

13   (PHONETIC) OF THE LOS ANGELES FIELD DIVISION, DEA.

14          Q    NOW, IN THIS REGISTRATION, IS THERE A NAME

15   LISTED?

16          MR. SEVERO:  OBJECTION.  CONTENT OF THE --

17   WHAT'S THE RELEVANCE HERE OF THIS DOCUMENT?

18          THE COURT:  I DON'T KNOW.  LET'S FIND OUT.

19          MR. SEVERO:  WELL -- OKAY.

20          THE COURT:  OVERRULED.  IS THERE A NAME IN THIS?

21          THE WITNESS:  YES, SIR, THERE IS.

22   BY MR. TRUTANICH:

23          Q    WHAT'S THE NAME?

24          A    MICHAEL WHITE.

25          Q    AND IS THERE AN ADDRESS?

22

1              A     YES, SIR.

2              Q     WHAT'S THE ADDRESS?

3              A     200 NORTH GLENDORA AVENUE, LA PUENTE.

4              Q     AND FOR THE RECORD, THE TYPE OF CAR IS A

5     LAMBORGHINI?

6              MR. SEVERO:  OBJECTION.  IRRELEVANT.

7              THE COURT:  OVERRULED.

8              THE WITNESS:  YES, SIR.

9     BY MR. TRUTANICH:

10             Q     WOULD YOU PLEASE TURN TO EXHIBIT NO. 6.

11    ARE YOU THERE?

12             A     YES, SIR.

13             Q     DO YOU RECOGNIZE THIS DOCUMENT?

14             A     YES, SIR.

15             Q     AND BEHIND EXHIBIT NO. 6 THERE'S ACTUALLY

16    TWO DOCUMENTS.  DO YOU RECOGNIZE THEM BOTH?  THE FIRST TWO

17    PAGES BEING ONE DOCUMENT, THE SECOND -- THE THIRD PAGE

18    BEING THE SECOND DOCUMENT.

19             A     YES, SIR, I DO.

20             Q     HOW DO YOU RECOGNIZE THE FIRST DOCUMENT

21    BEHIND EXHIBIT NO. 6?

22             A     IT'S A VEHICLE REGISTRATION PRINTOUT.

23             Q     AND DOES THIS VEHICLE REGISTRATION PRINTOUT

24    LIST A NAME?

25             A     YES, SIR, IT DOES.

                                                        23

```
 1            Q     AND WHERE IS THAT NAME LOCATED?

 2            A     IT'S ACTUALLY ON PAGE TWO.

 3            Q     WHAT'S THE NAME?

 4            A     BRIAN SLACK.

 5            Q     AND WHERE IS THAT CAR -- WHERE IS THE CAR

 6   REGISTERED TO?

 7            A     IT'S REGISTERED TO 2657 ANNAPOLIS ROAD,

 8   HANOVER, MARYLAND.

 9            Q     WHAT IS THE RELEVANCE TO THIS CAR WITH

10   RESPECT TO YOUR INVESTIGATION?

11            MR. SEVERO:  THAT'S A GOOD QUESTION.  OBJECTION;

12   RELEVANCY.

13            THE COURT:  WELL, WE WON'T KNOW UNTIL WE HEAR

14   THE ANSWERS.  OVERRULED.

15            THE WITNESS:  THIS WAS THE VEHICLE THAT MICHAEL

16   WHITE WAS DRIVING AT THE TIME OF HIS ARREST.

17   BY MR. TRUTANICH:

18            Q     AND THE VEHICLE THAT HE LEFT HIS HOUSE

19   FROM -- OR IN ON THE MORNING JUNE --

20            MR. SEVERO:  LEADING.  HE'S LEADING THE WITNESS.

21            THE COURT:  THAT IS LEADING.

22   BY MR. TRUTANICH:

23            Q     WERE YOU PRESENT WHEN MICHAEL WHITE WAS

24   DRIVING THIS VEHICLE?

25            A     YES, SIR, I WAS.
```

                                                              24

1        Q    AND WHEN WAS THAT?

2        A    WEDNESDAY, THE 23RD.

3        Q    WHERE WAS THAT?

4        A    WE WERE ESTABLISHED ON SURVEILLANCE ON

5   THE -- IN RIVERSIDE, CALIFORNIA, AT THE SAN LUIS REY

6   ADDRESS.

7        Q    WHEN MICHAEL WHITE WAS LEAVING THAT ADDRESS

8   IN THIS CAR, HOW WAS HE DRIVING?

9        A    HE WAS DRIVING FAIRLY QUICKLY, MAKING

10  SEVERAL TURNS IN WHAT I WOULD VENTURE TO SAY WAS TO

11  DETERMINE WHETHER HE WAS BEING FOLLOWED.

12        MR. SEVERO:  OBJECTION.  MOVE TO STRIKE

13  WHETHER HE WAS BEING FOLLOWED AS A CONCLUSION; IT'S

14  WITHOUT FOUNDATION.

15        THE COURT:  SUSTAINED.

16  BY MR. TRUTANICH:

17        Q    ARE YOU TRAINED --

18        THE COURT:  HE WAS DRIVING QUICKLY.  HE WAS

19  MAKING SEVERAL TURNS.

20  BY MR. TRUTANICH:

21        Q    AS A DEA AGENT, ARE YOU TRAINED IN WHAT'S

22  CALLED COUNTER-SURVEILLANCE DRIVING?

23        A    YES, SIR.

24        Q    AND WHEN YOU WERE OBSERVING MICHAEL WHITE

25  ON JUNE 23RD, DID YOU OBSERVE WHAT YOU'D BEEN TRAINED

25

1    FOR -- COUNTER-SURVEILLANCE DRIVING?

2              MR. SEVERO:  LACKS FOUNDATION.

3              THE COURT:  OVERRULED.

4              THE WITNESS:  IT WAS VERY CONSISTENT WITH

5    COUNTER-SURVEILLANCE TECHNIQUES, YES.

6    BY MR. TRUTANICH:

7         Q    NOW THE SECOND DOCUMENT IN EXHIBIT NO. 6,

8    DO YOU SEE THAT DOCUMENT, ON PAGE THREE?

9         A    YES, SIR.

10        Q    WHAT IS THIS DOCUMENT?

11        A    THIS IS A PRINTOUT OF A CALIFORNIA

12   REGISTRATION ON A 2006 BMW.

13        Q    AND DO YOU RECOGNIZE AN ADDRESS ON THIS

14   DOCUMENT?

15        A    YES, SIR, I DO.

16        Q    AND WHAT IS THE ADDRESS?

17        A    IT IS 200 NORTH GLENDORA AVENUE, LA PUENTE,

18   CALIFORNIA.

19        Q    IS THAT THE SAME ADDRESS THAT'S ON MICHAEL

20   WHITE'S DRIVER'S LICENSE?

21        A    YES, SIR.

22        Q    IS THAT THE SAME ADDRESS AS THE BAILBONDS

23   BUSINESS?

24        A    YES, SIR.

25        Q    NOW, WHAT IS THE NAME REGISTERED TO -- THIS

                                                  26

1    VEHICLE IS REGISTERED UNDER?

2         A    BRIAN T. SLACK.

3         Q    IS THAT THE SAME NAME AS THE OTHER DOCUMENT

4    IN EXHIBIT NO. 6?

5         A    YES, SIR.

6         Q    THE INFINITI THAT THE DEFENDANT WAS DRIVING

7    ON JUNE -- ON JUNE 23RD?

8         A    YES, SIR.

9         Q    NOW, BASED ON YOUR TRAINING AND EXPERIENCE

10   AS A DEA AGENT AND AT THE NASHVILLE POLICE DEPARTMENT AND

11   IN COLORADO, DO PEOPLE INVOLVED IN DRUG TRAFFICKING USE

12   FICTITIOUS NAMES AND ADDRESSES TO COVER UP THEIR DRUG

13   TRAFFICKING?

14        MR. SEVERO:  LACKS FOUNDATION AND LEADING THE

15   WITNESS.

16        THE COURT:  DOESN'T LACK FOUNDATION.  IT IS

17   LEADING THE WITNESS.  SUSTAINED.

18   BY MR. TRUTANICH:

19        Q    YOU'VE REVIEWED EXHIBITS NO. 6, NO. 5, NO.

20   4, AND NO. 3.  BASED ON THE VARIOUS NAMES AND ADDRESSES IN

21   EXHIBIT NOS. 5, 6, 4, AND 3, WHAT CONCLUSION, IF ANY, CAN

22   YOU DRAW BASED ON YOUR TRAINING AND EXPERIENCE?

23        MR. SEVERO:  OBJECTION.  IT'S VAGUE, AMBIGUOUS,

24   AND --

25        THE COURT:  SUSTAINED.

                                                           27

1    BY MR. TRUTANICH:

2            Q    DO DRUG TRAFFICKERS, BASED ON YOUR TRAINING

3    AND EXPERIENCE, USE VARIOUS NAMES?

4            MR. SEVERO:  OBJECTION, RELEVANCY.  I -- THAT'S

5    NOT THE ISSUE IN THIS CASE.

6            THE COURT:  I DON'T KNOW IF IT'S RELEVANT OR

7    NOT, BUT I THINK I'LL OVERRULE THAT.  YOU MAY ANSWER.

8            THE WITNESS:  YES, SIR.  IN MY EXPERIENCE, DRUG

9    TRAFFICKERS DO USE FICTITIOUS NAMES.

10   BY MR. TRUTANICH:

11           Q    AND WHY IS THAT?

12           MR. SEVERO:  OBJECTION.  LACKS FOUNDATION, AND

13   IT'S IRRELEVANT AS TO WHY.  IT'S ALSO ARGUMENTATIVE.

14           THE COURT:  OVERRULED.

15           THE WITNESS:  THERE'S SEVERAL REASONS.  ONE TO

16   CONCEAL THE ASSETS FROM LAW ENFORCEMENT -- TO ALSO HINDER

17   ANY KIND OF INVESTIGATION.  HAVING A FICTITIOUS NAME MAKES

18   IT EXTREMELY DIFFICULT TO OBTAIN THE TRUE IDENTITIES OF

19   THESE INDIVIDUALS.

20   BY MR. TRUTANICH:

21           Q    DURING YOUR INVESTIGATION OF THIS CASE,

22   HAVE YOU DETERMINED WHETHER THE PERSON IN COURT TODAY HAS

23   USED ANY OTHER FICTITIOUS ID'S?

24           A    YES, SIR, HE HAS.

25           MR. SEVERO:  OBJECTION.  THAT LACKS FOUNDATION.

                                                        28

1                    THE COURT:  THAT WAS A FOUNDATIONAL QUESTION.

2    HAS HE DETERMINED IT?  HE SAID, YES, HE HAS.  OVERRULED.

3    BY MR. TRUTANICH:

4            Q    WOULD YOU PLEASE TURN TO EXHIBIT 7.  IN

5    LOOKING AT EXHIBIT 7, DO YOU RECOGNIZE THE DOCUMENTS

6    BEHIND EXHIBIT 7?

7            A    YES, SIR.

8            Q    WHAT ARE -- HOW DO YOU RECOGNIZE THEM?

9            A    I RECOGNIZE THE CALIFORNIA DEPARTMENT OF

10   MOTOR VEHICLE DRIVER LICENSES WITH THE PHOTO OF THE

11   DEFENDANT IN DIFFERENT NAMES.

12                MR. SEVERO:  MOVE TO STRIKE "PHOTO OF THE

13   DEFENDANT."

14                THE COURT:  SUSTAINED.

15   BY MR. TRUTANICH:

16           Q    LOOKING AT THESE PHOTOS, DO YOU RECOGNIZE

17   THE PERSON DEPICTED IN THESE PHOTOS IN COURT TODAY?

18           A    YES, SIR, I DO.

19           Q    HOW DO YOU RECOGNIZE THE PERSON IN THESE

20   PHOTOS?

21           A    IT'S THE SAME PERSON WE ARRESTED LAST WEEK.

22           Q    NOW --

23                MR. SEVERO:  I MOVE TO STRIKE THAT AS LACKING

24   FOUNDATION.

25                THE COURT:  OVERRULED.

                                                              29

1         MR. SEVERO:  IT DOESN'T ANSWER THE QUESTION AS

2   TO WHY, YOUR HONOR -- HOW HE DETERMINES IT.  HE JUST MAKES

3   A CONCLUSION.  THAT'S -- THE QUESTION WAS, HOW DID HE

4   DETERMINE THAT.

5         THE COURT:  OVERRULED.

6   BY MR. TRUTANICH:

7         Q    TAKING A LOOK AT THE ADDRESS ON THE FIRST

8   PAGE OF EXHIBIT 1, --

9         THE COURT:  EXHIBIT 1?

10  BY MR. TRUTANICH:

11        Q    EXCUSE ME, EXHIBIT 7.  THE FIRST PAGE OF

12  EXHIBIT 7.

13        A    YES, SIR.

14        Q    AND THE NAME, IS THAT DIFFERENT THAN THE

15  NAME MICHAEL LEE WHITE?

16        A    YES, SIR, IT IS.

17        Q    AND, EXHIBIT 2 -- OR, EXCUSE ME, PAGE TWO

18  OF EXHIBIT 7.  WHAT IS THE NAME?

19        A    THAT NAME IS MICHAEL JEROME JONES.

20        Q    PAGE THREE OF EXHIBIT 7.

21        A    KEVIN CLERK.

22        MR. TRUTANICH:  YOUR HONOR, AT THIS TIME, THE

23  GOVERNMENT WOULD MOVE TO ADMIT EXHIBIT 7.

24        THE COURT:  ANY OBJECTION?

25        MR. SEVERO:  YES.  LACKS FOUNDATION.  THERE'S NO

                                                    30

1    RELEVANCY.  THERE'S NO INDICATION HERE -- I MEAN, THERE

2    ARE PICTURES HERE, YOUR HONOR, THAT MAY SEEM TO -- AS AN

3    AFRICAN-AMERICAN MALE THAT MAY PERHAPS HAVE SOME

4    RESEMBLANCE TO THE DEFENDANT IN THE PHOTOGRAPH.  BUT THIS

5    IS A 1996 PHOTOGRAPH.

6            THE COURT:  WHAT IS THE LEGAL OBJECTION?

7            MR. SEVERO:  IRRELEVANT AND LACKS FOUNDATION

8    BECAUSE THERE'S NO FOUNDATION AS TO WHETHER THIS

9    INDIVIDUAL THAT'S PICTURED HERE IS THE DEFENDANT.

10            THE COURT:  ALL RIGHT.  IT'S OVERRULED.  EXHIBIT

11   7 IS ADMITTED.

12   BY MR. TRUTANICH:

13            Q    TURNING TO EXHIBIT 8, DO YOU RECOGNIZE

14   EXHIBIT 8?

15            A    YES, SIR.

16            Q    HOW IS IT THAT YOU RECOGNIZE EXHIBIT 8?

17            A    IT WAS A REPORT THAT WAS FORWARDED TO ME BY

18   ASSISTANT U.S. ATTORNEY JANE MCLAUGHLIN.

19            Q    DO YOU KNOW HOW THAT U.S. ATTORNEY RECEIVED

20   THIS -- EXHIBIT 8?

21            A    SPECIAL AGENT JOHN HARVEY, OF THE DRUG

22   ENFORCEMENT ADMINISTRATION, ATLANTA FIELD DIVISION.

23            Q    WHAT IS EXHIBIT 8?

24            A    IT'S A (INAUDIBLE) REQUEST ON A STOP OF AN

25   AIRPLANE BACK IN 2006.

31

1          Q     NOW TAKING A LOOK AT EXHIBIT 8, THE THIRD

2     PAGE IN THE SECOND TO BOTTOM ROW, DO YOU SEE THE WORDS, "I

3     INTERVIEWED THE PASSENGERS, MICHAEL WHITE AND MR. GENARO

4     HIGGINS"?

5          A     YES, SIR.

6          Q     DO YOU RECOGNIZE BOTH OF THOSE NAMES?

7          A     YES, SIR.

8          Q     HOW IS IT THAT YOU RECOGNIZE THOSE NAMES?

9          A     THEY WERE INDICTED TOGETHER ON THE CASE OUT

10    OF ARIZONA.

11         Q     AND ACCORDING TO THIS DOCUMENT, THEY WERE

12    TOGETHER IN APRIL 2006.

13         A     YES, SIR.

14         Q     NOW, WOULD YOU PLEASE TAKE A LOOK AT THE

15    FOURTH PAGE OF EXHIBIT NO. 8.

16         A     YES, SIR.

17         Q     DO YOU RECOGNIZE ANY NAMES ON THE FOURTH

18    PAGE?

19         A     I RECOGNIZE MICHAEL WHITE'S NAME, WITH THE

20    ADDRESS AT 200 NORTH GLENDORA AVENUE, LA PUENTE,

21    CALIFORNIA, AND GENERO HIGGINS.

22         MR. TRUTANICH:  YOUR HONOR, AT THIS TIME TO THE

23    EXTENT -- I BELIEVE THE GOVERNMENT HAS NOT ADMITTED 5 AND

24    6 INTO EVIDENCE AND WOULD REQUEST THAT THE COURT DO SO,

25    RESPECTFULLY, NOW.

                                                          32

```
 1              MR. SEVERO:  I THINK I'D MAKE --

 2              THE COURT:  JUST A MOMENT; JUST A MOMENT.  OKAY.

 3    LET'S TAKE THEM ONE AT A TIME.  ANY OBJECTION TO EXHIBIT

 4    5?

 5              MR. SEVERO:  YES.

 6              THE COURT:  WHAT IS THE OBJECTION?

 7              MR. SEVERO:  RELEVANCY.  IT'S A --

 8              THE COURT:  ALL RIGHT.  OVERRULED.  THEY WILL BE

 9    ADMITTED.  AS TO EXHIBIT 6?

10              MR. SEVERO:  NO OBJECTION TO 6.

11              THE COURT:  IT WILL BE ADMITTED.

12              MR. TRUTANICH:  YOUR HONOR, BEFORE I PROCEED,

13    I'D INQUIRE THAT THE COURT -- I HAVE EXHIBITS 2 THROUGH 8

14    ADMITTED AND NOT EXHIBIT 1.

15              MR. SEVERO:  EXHIBIT 1 IS THE --

16              THE COURT:  JUST A MOMENT; JUST A MOMENT.

17              MR. TRUTANICH:  YOUR HONOR, I BELIEVE

18    EXHIBIT 4 --

19              THE COURT:  JUST A MOMENT.  JUST A MOMENT,

20    PLEASE.

21              ALL RIGHT.  YOU'RE SAYING 2 THROUGH 8 YOU

22    HAVEN'T SUBMITTED?

23              MR. TRUTANICH:  EXCEPT FOR 4.  SO IT WOULD BE 2

24    THROUGH 8, EXCEPT FOR 4, YOUR HONOR.

25              THE COURT:  IS THAT WHAT YOU HAVE, EILEEN?
```

                                                          33

```
 1              THE CLERK:  (INAUDIBLE)

 2              THE COURT:  I DON'T HAVE 8 EITHER.

 3              MR. TRUTANICH:  AT THIS TIME GOVERNMENT WOULD

 4      MOVE FOR 8 TO BE ADMITTED.

 5              THE COURT:  ALL RIGHT.  EXHIBIT 8.

 6              MR. SEVERO:  NO RELEVANCY, HEARSAY, FOUNDATION.

 7      RELEVANCY BECAUSE IT DOESN'T -- WE STILL HAVEN'T GOTTEN

 8      ANY EVIDENCE AT TO THE ISSUE IN THIS CASE.

 9              THE COURT:  I WILL CONDITIONALLY ADMIT 8,

10      SUBJECT TO ARGUMENTS ON RELEVANCY.

11              ALL RIGHT.  NOW WHAT ABOUT 4?  ARE YOU MOVING 4

12      OR NOT?

13              MR. SEVERO:  I HAVE NO OBJECTION TO 4.

14              THE COURT:  ALL RIGHT; 4 IS ADMITTED.  ALL

15      RIGHT.  GO AHEAD, MR. TRUTANICH.

16              MR. TRUTANICH:  WITH RESPECT TO EXHIBIT NO. 8,

17      BASED ON YOUR CONVERSATIONS WITH PAUL D'ALLORE (PHONETIC),

18      WHO WROTE THE DOCUMENT, AND THE OFFICER FROM -- THE

19      SERGEANT FROM THE BURBANK POLICE DEPARTMENT MENTIONED ON

20      PAGE FOUR OF THE DOCUMENT, DO YOU UNDERSTAND WHY THAT

21      PLANE WAS STOPPED?

22              MR. SEVERO:  OBJECTION.  RELEVANCY.

23              THE COURT:  THAT OBJECTION IS OVERRULED.

24              THE WITNESS:  THE PLANE WAS STOPPED BECAUSE IT

25      WAS UNDER SUSPICION OF ILLEGAL AIR CARRIER OPERATION WHERE
```

34

1   THEY WERE TRANSPORTING PASSENGERS FOR PAY.

2           MR. SEVERO:  I'M SORRY, YOUR HONOR.  I DIDN'T

3   HEAR THE LAST PORTION OF THE ANSWER.

4           THE COURT:  WHERE THEY WERE TRANSPORTING

5   PASSENGERS ILLEGALLY FOR PAY.

6   BY MR. TRUTANICH:

7       Q    YOU DIDN'T FIND -- THERE WAS NO -- BASED ON

8   YOUR READ OF EXHIBIT 8, YOU DIDN'T FIND ANY EVIDENCE.

9   THERE WAS NO EVIDENCE FOUND OF THAT DURING THIS PARTICULAR

10  STOP; IS THAT CORRECT?

11      A    THAT IS CORRECT.

12      Q    NEVERTHELESS, THE DEFENDANT WAS WITH GENERO

13  HIGGINS DURING THE STOP; IS THAT CORRECT?

14      A    THAT IS CORRECT.

15      Q    NOW, WOULD YOU PLEASE TURN TO EXHIBIT 1.

16      A    YES, SIR.

17      Q    WHAT IS EXHIBIT 1?

18      A    IT IS A RAP SHEET FROM THE LOS ANGELES

19  POLICE DEPARTMENT I RECEIVED FROM OFFICER PIERCE.

20          THE COURT:  THAT YOU RECEIVED FROM -- I'M SORRY?

21          THE WITNESS:  FROM OFFICER PIERCE OF THE

22  SOUTHEAST GANG UNIT.

23  BY MR. TRUTANICH:

24      Q    IN EXHIBIT 1, DOES IT LIST PARTICULAR

25  ADDRESSES THAT THE DEFENDANT HAS HAD IN THE PAST?

                                                    35

```
 1              A    YES, SIR.

 2              Q    AND WHERE IS THAT?

 3              A    200 NORTH GLENDORA AVENUE, 131, LA PUENTE,

 4   CALIFORNIA.

 5              Q    ARE THERE OTHER ADDRESSES ON PAGE TWO

 6   LISTED?

 7              A    YES, SIR.

 8              Q    AND ARE SOME OF THOSE ADDRESSES ALSO SEEN

 9   IN EXHIBIT NO. 7?

10              A    YES, SIR.

11              Q    ON PAGE NUMBER TWO, OF EXHIBIT NO. 2 THERE

12   IS A SECTION FOR MONIKER, DO YOU SEE THAT?

13              THE COURT:  I'M SORRY.  WHAT -- WHAT PAGE ARE

14   YOU?

15              MR. TRUTANICH:  EXCUSE ME, PAGE NUMBER TWO OF

16   EXHIBIT NO. 1, YOUR HONOR.

17              THE COURT:  OKAY.  AND WHAT WAS YOUR QUESTION

18   AGAIN?

19   BY MR. TRUTANICH:

20              Q    DO YOU SEE A SECTION TITLED "MONIKER"?

21              A    YES, SIR.

22              Q    AND WHAT MONIKER DO YOU RECOGNIZE THAT THE

23   DEFENDANT ANSWERED TO ON THE DAY OF HIS ARREST?

24              A    SKIP.

25              Q    IS THAT THE MONIKER THAT IS NAMED -- THE
```

                                                            36

1    DEFENDANT IS NAMED AS HAVING IN THE INDICTMENT?

2          A     YES, SIR.

3          Q     NOW WITH RESPECT TO PAGE NUMBER THREE,

4    THERE IS A CONVICTION IN 2001; DO YOU SEE THAT?

5          MR. SEVERO:  YOUR HONOR, WE'RE GOING TO GET

6    INTO THE CONTENT.  THE DOCUMENT WILL SPEAK FOR ITSELF IF

7    AND WHEN ADMITTED.  IF WE'RE GOING TO GET INTO THE CONTENT

8    OF THE DOCUMENT, THEN I THINK THERE'S GOT TO BE SOME

9    ARGUMENT AS TO THE ADMISSIBILITY OF THIS DOCUMENT.

10   OTHERWISE YOU'RE JUST GETTING INTO THE RECORD PIECEMEAL,

11   WITHOUT A RULING ON THE -- ON THE -- ON THE DOCUMENT.

12         FOR PURPOSES OF IDENTIFICATION, PAGES ONE AND

13   TWO MAY HAVE SOME RELEVANCY.  BEYOND THAT, THERE IS

14   NOTHING IN THE REMAINDER OF THIS DOCUMENT WHICH WOULD AID

15   THE COURT WITH THE DETERMINATION THAT YOU'RE REQUIRED TO

16   MAKE IN THIS HEARING.  THERE IS A WHOLE BUNCH OF CONTACTS

17   WITH POLICE AND SO FORTH, AND THEY'RE NOT PART OF HIS

18   HEARING.  THEY'RE JUST TOTALLY IRRELEVANT.

19         THE COURT:  ARE YOU SAYING THAT YOU DO NOT

20   CONTEST THE ADMISSION OF PAGES ONE AND TWO?

21         MR. SEVERO:  THAT'S CORRECT.  I BELIEVE THERE'S

22   SOME RELEVANCY TO ONE AND TWO.

23         THE COURT:  AND IS THE REST, MR. TRUTANICH, IS

24   THE REST OF IT A LISTING OF CONVICTIONS AND ARRESTS AND

25   THINGS OF THAT SORT?

                                                    37

1          MR. TRUTANICH:  YES, YOUR HONOR.  BUT THERE'S

2     TWO CONVICTIONS, WHICH AS THE COURT MIGHT REMEMBER, I

3     REQUESTED JUDICIAL NOTICE OF AT THE BEGINNING OF THE

4     HEARING.  AND THAT WOULD BE THE CONVICTION LIST ON PAGE

5     THREE FOR FALSE IDENTIFICATION TO A POLICE OFFICER, AND

6     THE CONVICTION ON PAGE FOUR FOR DRUG -- CONTROLLED

7     SUBSTANCES FOR SALE.

8          I BELIEVE THOSE ARE RELEVANT AS TO DEFENDANT'S

9     IDENTITY BASED ON THE EVIDENCE ADMITTED HERE IN COURT

10    TODAY.

11         THE COURT:  AND JUST TEASE THAT OUT.  HOW DO YOU

12    SEE IT AS BEING RELEVANT?

13         MR. TRUTANICH:  YOUR HONOR --

14         THE COURT:  LET'S ASSUME THAT THE RAP SHEET IS

15    ADMITTED.

16         MR. TRUTANICH:  YOUR HONOR, THE DOCUMENTS SEEN

17    IN EXHIBIT NO. 7, THE MULTIPLE ID'S ALSO ARE RELEVANT TO

18    THE FACT THAT DEFENDANT WAS IN FACT CONVICTED OF PROVIDING

19    A FAKE ID TO POLICE OFFICERS.  THEREFORE, I SUBMIT THAT

20    THAT IS RELEVANT TO THIS HEARING.

21         ALSO YOUR HONOR, THE POSSESSION OF CONTROLLED

22    SUBSTANCE OFFENSE, I REQUESTED THE COURT TAKE JUDICIAL

23    NOTICE OR THIS BECAUSE -- AND/OR ADMIT THIS DOCUMENT AND

24    THAT PAGE OF THIS DOCUMENT, BECAUSE I BELIEVE, YOUR HONOR,

25    IT -- IT INDICATES THAT THE DEFENDANT WAS INVOLVED IN THE

38

1    SALE OF DRUGS IN 2002, AND HE IS CHARGED WITH THAT OFFENSE

2    HERE TODAY.

3              AS YOU KNOW, THE RULES OF EVIDENCE DON'T APPLY

4    TO THESE HEARINGS, AND THEREFORE, IT COULD BE CONSIDERED

5    FOR PROPENSITY.

6              THE COURT:  COULD BE CONSIDERED WHAT?

7              MR. TRUTANICH:  IT COULD BE CONSIDERED FOR THE

8    CHARACTER OF THIS DEFENDANT.

9              MR. SEVERO:  THIS IS AN ID HEARING, JUDGE.

10             THE COURT:  ALL RIGHT.  DO YOU HAVE ANY OTHER

11   QUESTIONS ABOUT EXHIBIT 1, OTHER THAN THOSE LAST TWO --

12   OTHER THAN AS TO THOSE TWO CONVICTIONS?

13             MR. TRUTANICH:  NO, YOUR HONOR, AND WITH RESPECT

14   TO THE SECOND CONVICTION, THE GOVERNMENT WILL CONCEDE THAT

15   THE RELEVANCY IS LOW AND --

16             THE COURT:  I'LL ADMIT THE FIRST THREE PAGES OF

17   EXHIBIT 1.

18             MR. TRUTANICH:  VERY WELL.

19             MR. SEVERO:  MAY I BE HEARD ON THE PAGE THREE?

20   BECAUSE I THINK THERE'S A MISSTATEMENT MADE BY THE

21   GOVERNMENT AS TO PAGE THREE.

22             THE COURT:  I CAN READ IT.  IT SAYS, "FALSE

23   INFORMATION TO PEACE OFFICER."

24             MR. SEVERO:  THAT'S DIFFERENT THAN FALSE ID.

25             THE COURT:  I KNOW.  I CAN READ.

                                                        39

1          MR. SEVERO:  FALSE INFORMATION TO POLICE OFFICER

2     HAS NOTHING TO DO WITH --

3          THE COURT:  I CAN READ, MR. SEVERO.

4          MR. SEVERO:  I UNDERSTAND, SIR, I KNOW WHO YOU

5     ARE.  BUT I JUST WANT TO MAKE THE RECORD CLEAR THAT MR.

6     TRUTANICH HAS BEEN TRYING TO LINK --

7          THE COURT:  YOU'LL HAVE YOUR CHANCE TO ARGUE AND

8     TO EXAMINE.

9          MR. SEVERO:  OKAY.  BEFORE YOU ADMIT THIS?

10         THE COURT:  NO.  IT'S BEEN ADMITTED.

11         MR. SEVERO:  THANKS.

12         THE COURT:  THE FIRST THREE PAGES.

13    BY MR. TRUTANICH:

14         Q    AND TAKING A LOOK AT EXHIBIT NO. 1 ON THE

15    FIRST PAGE, DO YOU RECOGNIZE THE PERSON PICTURED IN

16    EXHIBIT 1 HERE IN COURT TODAY?

17         A    YES, SIR.

18         Q    AND WHERE IS HE SITTING?

19         A    HE'S SITTING RIGHT NEXT TO DEFENSE COUNSEL.

20         MR. TRUTANICH:  YOUR HONOR, AT THIS TIME, THE

21    GOVERNMENT RESTS.

22         THE COURT:  WELL, NOW JUST A MOMENT.  YOU'RE

23    THROUGH WITH THIS WITNESS -- YOUR EXAMINATION OF THIS

24    WITNESS?

25         MR. TRUTANICH:  YES, YOUR HONOR.

                                                        40

1              THE COURT:  ALL RIGHT.  LET'S GIVE THE DEFENSE

2    COUNSEL AN OPPORTUNITY TO CROSS EXAMINE.

3              MR. TRUTANICH:  VERY WELL.

4

5                        CROSS EXAMINATION

6    BY MR. SEVERO:

7              Q    AGENT BELL, YOU WERE NOT IN THE DEA IN

8    2003, WERE YOU?

9              A    NO, SIR.

10             Q    SO HAVE YOU READ THE INDICTMENT IN THIS

11   CASE?

12             A    YES, SIR.

13             Q    AND THE INDICTMENT INDICATES THAT THE

14   CONSPIRACY CHARGE IN ARIZONA STARTED IN '03; CORRECT?

15             A    YES, SIR.

16             Q    SO YOU WERE NOT PART OF THE -- ANY

17   INVESTIGATION IN '03; IS THAT CORRECT?

18             A    THAT IS CORRECT.

19             Q    WHEN DID YOU START WITH THE DEA?

20             A    2004.

21             Q    AND WHERE WERE YOU ASSIGNED IN 2004?

22             A    PHOENIX FIELD DIVISION.

23             Q    AND WERE YOU PART OF ANY INVESTIGATION

24   CONCERNING THIS CASE IN '04?

25             A    NO, SIR.

                                                        41

```
 1              Q    HOW ABOUT '05?

 2              MR. TRUTANICH:  OBJECTION, YOUR HONOR.

 3  RELEVANCY.

 4              THE COURT:  OVERRULED

 5  BY MR. SEVERO:

 6              Q    '05?

 7              A    NO, SIR.

 8              Q    '06?

 9              A    NO, SIR.

10              Q    '07?

11              A    NO, SIR.

12              Q    '08?

13              A    NO, SIR.

14              Q    '09?

15              A    NO, SIR.

16              Q    '10?

17              A    YES, SIR.

18              Q    OKAY.  SO YOUR -- YOUR INVOLVEMENT IN THE

19  INVESTIGATION OF THE CASE INDICTED IN ARIZONA THAT'S

20  BEFORE THIS COURT IS FOR HOW MANY MONTHS OF 2010?

21              A    APPROXIMATELY ONE MONTH.

22              Q    SO FOR THE LAST MONTH YOU WERE ASKED TO

23  ASSIST IN MAKING THE ARREST; CORRECT?

24              A    I WAS ASKED, YES.

25              Q    YOU WERE NOT EVEN PART OF THE INVESTIGATION
                                                            42
```

1    AT ALL; JUST MAKING THE ARRESTS, TRUE?

2              MR. TRUTANICH:  OBJECTION, YOUR HONOR.

3              THE COURT:  WHAT'S THE OBJECTION?

4              MR. TRUTANICH:  IT MISCHARACTERIZES HIS

5    TESTIMONY.

6              THE COURT:  WELL, HE ASKED HIM IF IT'S TRUE, SO

7    LET'S GET THE ANSWER.  OVERRULED.

8              THE WITNESS:  THAT IS TRUE.

9    BY MR. SEVERO:

10             Q    IN 2008, THIS SEARCH WARRANT IN SCOTTSDALE

11   THAT WAS SERVED, YOU WEREN'T PART OF THE TEAM THAT SERVED

12   THE SEARCH WARRANT?

13             A    NO, SIR.

14             Q    AND MR. WHITE, THE GENTLEMAN -- WELL, LET'S

15   PUT IT THIS WAY.  THE PERSON TO WHOM EXHIBIT 2 -- THE

16   HERTZ CLUB GOLD?

17             A    YES, SIR.

18             Q    WAS THAT PERSON PRESENT WHEN THE SEARCH

19   WARRANT WAS SEARCHED -- WAS SERVED?

20             A    NO, SIR.

21             Q    AND YOU WOULD KNOW THAT FROM READING

22   REPORTS; CORRECT?

23             A    YES, SIR.

24             Q    IN FACT, THE KNOWLEDGE THAT YOU BRING FORTH

25   TO THIS COURT IS STRICTLY -- STRICTLY BASED ON THE READING

                                                              43

1    OF REPORTS AND CONVERSATIONS WITH AGENTS.

2          A    THAT'S CORRECT, SIR.

3          Q    NOW, WHAT YOU WERE TELLING THE COURT HERE

4    TODAY IS THAT WHAT YOU HAVE LEARNED THROUGH THESE

5    CONVERSATIONS IS THAT THIS CARD, EXHIBIT 2, WAS FOUND

6    WHERE THE SEARCH WARRANT WAS SERVED; TRUE?

7          A    ITEM 2 -- OR EXHIBIT 2, EXCUSE ME, WAS

8    LOCATED WHERE THE SEARCH WARRANT IN SCOTTSDALE, ARIZONA

9    OCCURRED, YES.

10          Q    AND THAT'S THE EXTENT OF ALL THE DOCUMENTS

11    THAT WERE DISCOVERED THAT HAD THE NAME MICHAEL WHITE ON

12    IT; CORRECT?

13          A    THAT'S -- AS FAR AS THE DOCUMENT, EXHIBIT 2

14    IS CONCERNED, YES, SIR.

15          Q    IT'S THE ONLY ONE THAT HAS BEEN TOLD TO YOU

16    WAS FOUND DURING THE SERVICE OF THAT SEARCH WARRANT;

17    CORRECT?

18          A    YES, SIR.

19          Q    AND DURING THE SERVICE -- DURING THE

20    INVESTIGATION IN '08, THE NAME MICHAEL WHITE CAME UP ONLY

21    AS A RESULT OF THIS HERTZ CLUB GOLD CARD; CORRECT?

22          A    CORRECT.

23          Q    NOW, YOU WEREN'T PART OF THE SEARCH OF THE

24    WAREHOUSE THAT WAS DONE ALSO IN 2008; TRUE?

25          A    THAT IS TRUE.

                                                          44

```
 1              Q     AND ANY DOCUMENTS THAT YOU'RE AWARE OF THAT
 2   WERE SEIZED DURING THAT -- DURING THAT SEARCH?
 3              A     I DON'T KNOW.
 4              Q     AND BECAUSE YOU DON'T KNOW OF ANY DOCUMENTS
 5   WERE ACTUALLY SEIZED, OBVIOUSLY, YOU DON'T KNOW OF ANY
 6   INDICATIONS THAT MR. WHITE WAS EVEN PRESENT AT THIS
 7   WAREHOUSE; CORRECT?
 8              A     THAT IS CORRECT.
 9              Q     HAVE YOU VISITED 200 NORTH GLENDORA AVENUE?
10              A     NO, SIR.
11              Q     ARE YOU AWARE OF WHETHER 200 NORTH GLENDORA
12   AVENUE HAS A SUITE 131?
13              A     NO, SIR.
14              Q     ARE YOU AWARE IF THERE WAS ANYTHING ILLEGAL
15   GOING ON AT 200 NORTH GLENDORA AVENUE?
16              MR. TRUTANICH:  OBJECTION, YOUR HONOR.
17   RELEVANCE.
18              THE COURT:  OVERRULED.
19              THE WITNESS:  NO, SIR.
20   BY MR. SEVERO:
21              Q     NOW, HAVE YOU, YOURSELF, SEEN THE REPORTS
22   OF INTERVIEWS OF ANY CONFIDENTIAL INFORMANT?
23              A     YES, SIR.
24              Q     YOU'VE READ THEM?
25              A     YES, SIR.
```

45

1          Q    ALL RIGHT.  AND YOU KNOW WHO THESE
2    INFORMANTS ARE?
3          A    NO, SIR.
4          Q    DIRECTING YOUR ATTENTION TO NO. 8 FOR
5    IDENTIFICATION.
6          A    I'M SORRY.  EXHIBIT 8, SIR?
7          Q    YES, SIR.
8          A    OKAY.  YES, SIR.
9          Q    ARE YOU AWARE HOW THE GENTLEMAN NAMED ON
10   THIS AIRPLANE AS MR. MICHAEL WHITE WAS IDENTIFIED AT THE
11   TIME THAT THIS REPORT WAS WRITTEN?
12         A    IN TALKING TO --
13         Q    JUST TELL ME WHETHER YOU ARE AWARE OF
14   WHETHER YOU KNOW HOW HE WAS IDENTIFIED?  IT'S A YES OR NO.
15         A    IT'S --
16         MR. TRUTANICH:  YOUR HONOR, I OBJECT TO THE FORM
17   OF THE QUESTION.
18         THE COURT:  THERE'S NOTHING WRONG WITH THE FORM
19   OF THE QUESTION.  DO YOU KNOW HOW MR. WHITE WAS IDENTIFIED
20   ON THIS DOCUMENT?
21         THE WITNESS:  NO, SIR.
22   BY MR. SEVERO:
23         Q    DO YOU KNOW HOW MR. GENERO HIGGINS WAS
24   IDENTIFIED FROM THIS DOCUMENT?
25         A    NO, SIR.

                                                    46

1           Q    OTHER THAN YOUR INVOLVEMENT IN AIDING THE

2   DEA IN THE ARRESTS OF THE PERSONS NAMED IN THE INDICTMENT,

3   YOU HAVE TAKEN PART OF -- YOU HAVE TAKEN NO PART IN THE

4   INVESTIGATION OF THE ALLEGATIONS IN THIS.  ISN'T THAT

5   CORRECT?

6           A    THAT IS CORRECT.

7           MR. SEVERO:  I HAVE NOTHING FURTHER.

8           THE COURT:  ALL RIGHT,  ANY REDIRECT?

9           MR. TRUTANICH:  YES, YOUR HONOR.  BRIEFLY.

10

11                    RE-DIRECT EXAMINATION

12  BY MR. TRUTANICH:

13          Q    YOU SPOKE WITH THE FAA AGENT THAT WROTE THE

14  REPORT THIS MORNING; IS THAT CORRECT?

15          A    THAT IS CORRECT.

16          THE COURT:  EXCUSE ME, WHICH REPORT?

17          MR. TRUTANICH:  I'M REFERRING TO EXHIBIT NO. 8;

18  IS THAT CORRECT?

19          THE WITNESS:  YES, SIR.

20  BY MR. TRUTANICH:

21          Q    AND WHEN YOU SPOKE TO HIM, DID HE TELL

22  YOU -- DID HE REMEMBER WHETHER HE ACTUALLY PHYSICALLY EVER

23  SAW AN ID, OR WHETHER HE -- OR WHETHER THE PERSON NAMED

24  MICHAEL WHITE TOLD HIM THE NAME, ADDRESS, AND PHONE NUMBER

25  LISTED ON PAGE FOUR OF EXHIBIT 8?

                                                        47

1             MR. SEVERO:  THAT IS A LEADING QUESTION.

2             THE COURT:  SUSTAINED.

3    BY MR. TRUTANICH:

4             Q    DID HE TELL YOU WHETHER HE WAS TOLD IT

5    ORALLY OR WHETHER HE WITNESSED -- WHETHER HE SAW IT

6    THROUGH AN IDENTIFICATION CARD?

7             MR. SEVERO:  LEADING.

8             THE COURT:  SUSTAINED.

9    BY MR. TRUTANICH:

10            Q    DID YOU LEARN HOW HE -- DID YOU LEARN HOW

11   HE SAW THE -- OR HOW THIS INFORMATION ENDED UP ON PAGE

12   FOUR4?

13            A    YES, SIR.

14            Q    WHAT DID HE TELL YOU ABOUT WHAT HE

15   REMEMBERED?

16            A    HE TOLD ME THAT MICHAEL WHITE PROVIDED THAT

17   INFORMATION TO HIM.

18            Q    DID HE KNOW ONE WAY OR THE OTHER WHICH --

19   HOW THAT INFORMATION -- COULD HE REMEMBER BACK FROM 2006

20   HOW HE GOT THAT INFORMATION?

21            A    HE WAS NOT CERTAIN, NO, SIR.

22            Q    AND DID HE TALK ABOUT HIS HABIT AND

23   PRACTICE DURING THAT PHONE CONVERSATION WITH HIM?

24            A    YES, SIR, HE DID.

25            Q    AND WHAT DID HE TALK ABOUT WHEN HE TALKED

                                                        48

1    ABOUT HIS HABIT AND PRACTICE?

2              MR. SEVERO:  IRRELEVANT.  AND I MOVE TO STRIKE

3    THE -- THAT ANSWER CONCERNING WHAT THE AGENT AT THE

4    AIRPORT TOLD THIS WITNESS AS SPECULATION. BECAUSE NOW WE

5    LEARN AFTERWARDS THAT HE WAS NOT CERTAIN.  HE DIDN'T

6    REMEMBER.

7              THE COURT:  IT'S OVERRULED.  BUT I WILL GIVE YOU

8    A CHANCE TO RE-CROSS BECAUSE THIS IS GOING INTO SOME NEW

9    TERRITORY.

10   BY MR. TRUTANICH:

11             Q    WHAT DID HE TELL YOU ABOUT HIS HABIT AND

12   PRACTICE WHEN GETTING IDENTIFICATION?

13             MR. SEVERO:  OBJECTION.  HABIT AND PRACTICE IS

14   IRRELEVANT.

15             THE COURT:  OVERRULED.

16             THE WITNESS:  THE AGENT SAID IT IS COMMON

17   PRACTICE FOR HIM TO OBTAIN PHOTO ID OF PEOPLE HE WAS

18   QUESTIONING.

19             MR. TRUTANICH:  NO FURTHER QUESTIONS.

20             THE COURT:  ALL RIGHT.  WOULD YOU LIKE TO

21   RE-CROSS ON JUST THIS LAST POINT?

22             MR. SEVERO:  YES, THAT'S ALL.

23             THE COURT:  GO AHEAD.

24             MR. SEVERO:  THANK YOU.

25   ///

49

```
 1                    RE-CROSS EXAMINATION

 2   BY MR. SEVERO:

 3           Q    AGENT BELL, WHAT WAS THE NAME OF THE PERSON

 4   YOU SPOKE WITH THIS MORNING?

 5           A    PAUL D'ALLURO.

 6           Q    PAUL?

 7           A    D'ALLURO.

 8           Q    CAN YOU SPELL THAT FOR US?

 9           A    PAUL IS P-A-U-L, D'ALLURO IS D-APOSTROPHE

10   A-L-L-U-R-O.

11           Q    DID MR. D'ALLURO TELL YOU THAT HE

12   REMEMBERED SPECIFICALLY SEEING IDENTIFICATION FROM THE

13   PERSON HE REPORTED TO BE MICHAEL WHITE?

14           A    NO, SIR.

15           Q    HE DIDN'T REMEMBER, DID HE?

16           A    NO, SIR.

17           Q    HE ONLY TOLD YOU THAT BECAUSE IT'S HIS

18   COMMON PRACTICE TO DO SO THAT THAT'S WHAT HE MUST HAVE

19   DONE THEN; CORRECT?

20           A    CORRECT.

21           Q    AND HE ALSO DIDN'T TELL YOU WHETHER HE

22   ACTUALLY SAW ANY ID FROM A GENERO HIGGINS, DID HE?

23           A    HE DID NOT.

24           MR. SEVERO:  I HAVE NOTHING FURTHER.

25           THE COURT:  ALL RIGHT.  MR. TRUTANICH ANY
                                                         50
```

1  FURTHER QUESTIONS OF THIS WITNESS IN THE WAY OF RE-DIRECT
2  AS TO THIS LAST POINT?
3          MR. TRUTANICH:  NO, YOUR HONOR.
4          THE COURT:  ALL RIGHT.  THANK YOU, AGENT BELL.
5  YOU MAY STEP DOWN.
6          DO YOU HAVE ANOTHER WITNESS, MR. TRUTANICH?
7          MR. TRUTANICH:  YES, YOUR HONOR.  THERE WAS --
8  YES, YOUR HONOR.  THE GOVERNMENT IS GOING TO CALL ONE
9  WITNESS IF I MAY.
10          THE COURT:  GO AHEAD.
11          MR. TRUTANICH:  ONE ADDITIONAL WITNESS, LINDA
12  FARRAR WITH THE UNITED STATES MARSHALLS, IF SHE'S
13  AVAILABLE.  THERE'S A POINT --
14          THE COURT:  JUST A MOMENT.  YOU DON'T NEED TO
15  EXPLAIN.  YOU CAN JUST CALL YOUR WITNESS.
16          (THE CLERK SWEARS IN THE WITNESS.)
17          THE CLERK:  PLEASE BE SEATED AND STATE AND SPELL
18  YOUR NAME FOR THE RECORD.
19          THE WITNESS:  MY NAME IS LINDA FARRAR, LAST NAME
20  IS F, AS IN FRANK-A-R-R-A-R.
21
22                  DIRECT EXAMINATION
23  BY MR. TRUTANICH:
24          Q    WHAT DO YOU DO FOR A LIVING?
25          A    I WORK FOR THE U.S. MARSHALL'S SERVICE.
                                                        51

1    I'M A SUPERVISOR DETENTION ENFORCEMENT OFFICER.

2              Q    AND WHAT DOES THAT MEAN?

3              A    THAT MEANS I SUPERVISE THE BOOKING OF NEW

4    ARRESTS, HOUSING OF INMATES THAT COME TO OUR CELLBLOCK

5    EVERY DAY.

6              Q    NOW, YESTERDAY AFTERNOON AND THIS MORNING,

7    DID YOU HAVE AN OPPORTUNITY TO REVIEW THE BOOKING RECORDS

8    FOR ANYBODY SITTING IN COURT TODAY?

9              A    YES.

10             THE COURT:  JUST -- JUST A MOMENT.  THIS IS IN

11   LOS ANGELES?

12             THE WITNESS:  YES, SIR.

13             THE COURT:  AT MDC?

14             THE WITNESS:  NO, IT WAS HERE AT THE COURTHOUSE.

15             THE COURT:  AT THE COURTHOUSE, ALL RIGHT.

16             THE WITNESS:  WE'RE ABOVE COURTHOUSE.

17             THE COURT:  ALL RIGHT.  GO AHEAD, MR. TRUTANICH.

18   BY MR. TRUTANICH:

19             Q    SO YESTERDAY AFTERNOON OR THIS MORNING DID

20   YOU -- WERE YOU ABLE TO REVIEW THE BOOKING RECORDS FOR

21   ANYBODY SITTING IN COURT TODAY?

22             A    YES, THE INDIVIDUAL SITTING OVER AT THE

23   DEFENSE TABLE.  MR. WHITE, I BELIEVE.

24             Q    NOW, I'M GOING TO SHOW YOU A DOCUMENT

25   WHICH -- YOUR HONOR, I ONLY HAVE ONE COPY OF -- AND THIS

                                                      52

1    GOES, EXCUSE ME, I HAVE TWO COPIES OF --

2            THE COURT:  HAVE YOU SHOWN IT TO DEFENSE

3    COUNSEL?

4            MR. TRUTANICH:  NO.  THIS GOES TO A POINT THAT'S

5    A NEW ISSUE.

6            THE COURT:  THEN SHOW IT TO HIM.

7            MR. SEVERO:  I HAVE SEEN IT, YOUR HONOR.

8    ACTUALLY, I AM WILLING TO STIPULATE THAT MR. WHITE --

9            THE COURT:  WELL, I HAVEN'T SEEN IT.  I HAVE NOT

10   IDEA WHAT ANYBODY'S TALKING ABOUT.

11           MR. SEVERO:  THIS IS HIS BOOKING PHOTO -- THIS

12   GENTLEMAN'S BOOKING PHOTO, WHEN HE WAS BOOKED HERE.

13   THERE'S NO QUESTION THAT THE PERSON SITTING AT THIS TABLE

14   WAS BOOKED AND THAT THIS IS HIS PICTURE.  THERE'S NO

15   QUESTION ABOUT THAT.  SO I'M WILLING TO STIPULATE TO THAT.

16           THE COURT:  WELL, I DON'T KNOW WHAT THE PURPOSE

17   OF IT IS.  ARE YOU WANTING TO OFFER THIS INTO EVIDENCE,

18   MR. TRUTANICH?

19           MR. TRUTANICH:  I -- I'M SHOWING IT TO HER AS

20   NEXT IN ORDER FOR IDENTIFICATION.

21           THE COURT:  ALL RIGHT.  LET'S GO AHEAD.

22                 (CELL PHONE RINGING.)

23           THE WITNESS:  EXCUSE ME, I'M SORRY.

24           THE COURT:  PASS IT TO THE CLERK.

25           MR. TRUTANICH:  YES, YOUR HONOR.

                                                    53

1          THE COURT:  LET'S MARK IT AS THE NEXT ORDER.

2          THE CLERK:  IT'S MARKED AS EXHIBIT 9.  EXHIBIT 9

3  IS BEFORE THE WITNESS.

4  BY MR. TRUTANICH:

5          Q    NOW, DID YOU REVIEW THE BOOKING RECORDS FOR

6  DEFENDANT MICHAEL WHITE, WHICH IS PICTURED IN -- EXCUSE

7  ME, FOR THE PERSON THAT WAS BOOKED, IN EXHIBIT 9?

8          A    YES.

9          Q    AND WHEN YOU REVIEWED THE BOOKING RECORDS,

10  WHAT DOES THAT MEAN?

11          A    WELL, I LOOKED UP THE DAY WE FINGERPRINTED

12  HIM AND PHOTO'D HIM, AND PULLED HIS PHOTOS AND HIS

13  FINGERPRINTS.

14          Q    WHEN A DEFENDANT IS BOOKED AT MDC, HE'S

15  FINGERPRINTED?

16          A    ACTUALLY, HE'S NOT MDC.  IT'S THE ROYBAL

17  CELLBLOCK WITH THE U.S. MARSHALLS.  WE'RE TWO SEPARATE

18  ENTITIES.  SO YES, WHEN HE'S -- WHEN HE'S BOOKED INTO OUR

19  CELLBLOCK, WE PHOTO AND FINGERPRINT THEM.  THE

20  FINGERPRINTS ARE SUBMITTED TO THE FBI VIA OUR AUTOMATED

21  BOOKING SYSTEM.  THEN THE FBI SYSTEM SENDS US BACK AN

22  IDENTIFICATION ON THAT INDIVIDUAL, BASED ON HIS

23  FINGERPRINTS.

24          Q    WHEN YOU REVIEWED THE FBI IDENTIFICATION

25  BASED ON THE INDIVIDUAL BOOKED IN EXHIBIT -- IN PHOTOGRAPH

54

1    PICTURED IN EXHIBIT 9, WHAT WAS THE RESULT OF THE FBI

2    FINGERPRINTING?

3         A    THE FINGERPRINTS CAME BACK AS BELONGING TO

4    MR. MICHAEL WHITE.  AND THEN ALSO THEY PROVIDED US, VIA

5    E-MAIL, HIS RAP SHEET.

6         MR. TRUTANICH:  YOUR HONOR, AT THIS TIME, THE

7    GOVERNMENT WOULD MOVE TO ADMIT EXHIBIT NO. 9.

8         THE COURT:  ANY OBJECTION?

9         MR. SEVERO:  NO.

10        THE COURT:  EXHIBIT 9 IS ADMITTED.

11        MR. TRUTANICH:  NO FURTHER QUESTIONS, YOUR

12   HONOR.

13        THE COURT:  ANY CROSS EXAMINATION?

14        MR. SEVERO:  NO, YOUR HONOR.

15        THE COURT:  ALL RIGHT.  THANK YOU.  YOU MAY STEP

16   DOWN.  CALL YOUR NEXT WITNESS.

17        MR. TRUTANICH:  NOTHING FROM THE GOVERNMENT,

18   YOUR HONOR.

19        THE COURT:  ANY ADDITIONAL EXHIBITS TO TENDER?

20        MR. TRUTANICH:  YOUR HONOR, I BELIEVE THAT THE

21   GOVERNMENT HAS SUBMITTED ALL THE EVIDENCE.

22        THE COURT:  ALL RIGHT.  GOVERNMENT RESTS?

23        MR. TRUTANICH:  YES, YOUR HONOR.

24        THE COURT:  MR. SEVERO, DO YOU WISH TO PRESENT

25   ANY TESTIMONY?

                                                    55

1              MR. SEVERO:  NO, YOUR HONOR.

2              THE COURT:  ANY EXHIBITS TO TENDER?

3              MR. SEVERO:  NO, YOUR HONOR.

4              THE COURT:  SO DEFENSE RESTS?

5              MR. SEVERO:  DEFENSE RESTS.  I STILL THINK -- WE

6    STILL HAVE THE ISSUE OF THE CONDITIONAL ADMISSION OF

7    NUMBER 8.

8              THE COURT:  YES.  EXHIBIT 8 WILL BE ADMITTED.

9              ALL RIGHT.  I'LL HEAR ARGUMENT, MR. TRUTANICH.

10             MR. TRUTANICH:  YES, YOUR HONOR.  BEFORE GETTING

11   TO THE FACTS, I'D REMIND THE COURT THAT THE DEFENDANT

12   HIMSELF HAS ADMITTED -- THERE'S EVIDENCE BEFORE THE COURT

13   THAT THE DEFENDANT, HIMSELF, HAS ADMITTED TO BEING MICHAEL

14   LEE WHITE ON SEVERAL OCCASIONS.  FIRST AND FOREMOST BEFORE

15   THIS COURT DURING HIS INITIAL APPEARANCE.  AND WITH THAT,

16   THERE IS AN INFERENCE THAT THE COURT CAN DRAW AND SHOULD

17   DRAW FROM THAT, ESPECIALLY SINCE THE DEFENDANT HAS PUT NO

18   EVIDENCE BEFORE THE COURT TO REBUT THAT PRESUMPTION.

19             ADDITIONALLY, YOUR HONOR, AND FACTUALLY, THE

20   COURT HAS HEARD EVIDENCE THAT THE DEFENDANT'S -- THE

21   DEFENDANT HAS A MONIKER BY THE NAME OF SKIP, THAT HE

22   ANSWERED TO THAT MONIKER THE DAY THAT HE WAS ARRESTED.

23   THE DEFENDANT, MICHAEL LEE WHITE, NAMED IN THE INDICTMENT

24   IN ARIZONA, ALSO IS CHARGED WITH AN AKA OF SKIP.

25             THE COURT HAS BEFORE IT IN EXHIBIT 1 ON PAGE TWO

                                                          56

1  A REFERENCE ON A LOS ANGELES COUNTY CRIMINAL HISTORY

2  PRINTOUT OF THE DEFENDANT'S KNOWN MONIKER, SKIP.

3          YOUR HONOR, INSIDE OF EXHIBIT 1 JUST ABOVE THE

4  DEFENDANT'S KNOWN MONIKER ARE SEVERAL ADDRESSES.  THOSE

5  ADDRESSES CORRESPOND SPECIFICALLY ON THE LOWER LEFT-HAND

6  CORNER NORTH GLENDORA AVENUE -- THAT CORRESPONDS TO THE

7  DEFENDANT'S DRIVER'S LICENSE PULLED FROM THE DMV, AS WELL

8  AS THE PICTURE ON THAT DRIVER'S LICENSE CORRESPONDS WITH

9  THE PICTURE ON PAGE ONE OF EXHIBIT 1.

10          THE COURT HAS HEARD TESTIMONY FROM THE SPECIAL

11  AGENT, AND THE COURT AS THE FACT FINDER IN THIS CASE CAN

12  MAKE ITS OWN CONCLUSION THAT THE PERSON DEPICTED IN BOTH

13  EXHIBIT 1, EXHIBIT 3, AND EXHIBIT 7, ALL ARE MICHAEL LEE

14  WHITE.

15          THE FACT THAT THE DEFENDANT HAS MULTIPLE FAKE

16  ID'S INDICATES, BASED ON THE TESTIMONY OF SPECIAL AGENT

17  BELL, THAT HE HAS BEEN INVOLVED IN DRUG TRAFFICKING OR

18  COULD BE INVOLVED IN DRUG TRAFFICKING, BASED ON HIS

19  TRAINING AND EXPERIENCE.  AND THE FACT THAT HE WAS

20  OBSERVED CONDUCTING COUNTER-SURVEILLANCE DRIVING FURTHER

21  INDICATES THE DEFENDANT'S CONSCIOUSNESS OF GUILT AND

22  POSSIBLE KNOWLEDGE OF AN ARIZONA INDICTMENT.

23          YOUR HONOR, BEFORE THE COURT ARE DOCUMENTS IN

24  EXHIBITS 5 AND 6.  THOSE DOCUMENTS SHOW, SPECIFICALLY

25  EXHIBIT 5, THAT THE DEFENDANT HAS A LAMBORGHINI -- A 2005

57

1   LAMBORGHINI REGISTERED TO MICHAEL LEE WHITE, AT 200 NORTH

2   GLENDORA AVENUE, IN LA PUENTE, THE SAME ADDRESS DEPICTED

3   ON HIS DRIVER'S LICENSE; THE SAME ADDRESS THAT

4   DEFENDANT -- EXCUSE ME, THAT SPECIAL AGENT BELL TOLD THE

5   COURT IN THE DEFENDANT'S OWN WORDS WAS ADMITTED -- OR WAS

6   OWNED BY HIS FATHER OR DAD, BUT NOT BIOLOGICAL FATHER,

7   JIMMY FLORES.

8        YOUR HONOR, THE COURT HAS HEARD TESTIMONY THAT

9   KNOWN DRUG TRAFFICKERS ALSO USE FICTITIOUS NAMES.  IN

10  ADDITION TO EXHIBIT 7, THERE'S EVIDENCE BEFORE THE COURT

11  THAT THE AUTOMOBILE THAT THE DEFENDANT DROVE ON JUNE 23RD

12  WAS, IN FACT, REGISTERED TO A BRIAN SLACK AND REGISTERED

13  TO A DIFFERENT ADDRESS IN MARYLAND.  THAT INDICATES THAT

14  THE DEFENDANT WAS, PERHAPS, REGISTERING CARS IN DIFFERENT

15  ADDRESSES UNDER FICTITIOUS NAMES BECAUSE HE DIDN'T WANT TO

16  BE CAUGHT BY LAW ENFORCEMENT.

17       ANOTHER CAR SITTING IN FRONT OF THE DRIVEWAY

18  THAT DEFENDANT LEFT FROM THE DAY OF HIS ARREST -- AND

19  THAT'S IN EXHIBIT -- EXHIBIT 6, PAGE THREE -- WAS A BLACK

20  BMW.  AND THAT WAS REGISTERED, AGAIN, TO 200 NORTH

21  GLENDORA AVENUE, THE ADDRESS OF DEFENDANT'S FATHER.  AND

22  YET THAT CAR WAS REGISTERED TO BRIAN SLACK.

23       THE GOVERNMENT SUBMITS TO THE COURT THAT THERE

24  IS SIGNIFICANT EVIDENCE TO PROVE THAT THE DEFENDANT IS

25  USING MULTIPLE NAMES AND MULTIPLE ADDRESSES IN ORDER TO

58

1    EVADE LAW ENFORCEMENT, AND THE GOVERNMENT -- AND THE COURT

2    HAS HEARD TESTIMONY TO THAT FACT.

3              MOST IMPORTANTLY, YOUR HONOR, THE COURT CAN LOOK

4    TO EXHIBIT 8 AND SEE THAT THE DEFENDANT HAS -- THAT

5    SOMEBODY NAMED MICHAEL LEE WHITE, THAT HAS USED THE

6    ADDRESS 200 NORTH GLENDORA AVENUE, WAS ASSOCIATING WITH

7    ANOTHER DEFENDANT IN THE INDICTMENT, MR. HIGGINS, FOUR

8    YEARS AGO.  THE CHARGE INDICTMENT GOES BACK THAT FAR.  THE

9    CHARGE OF CONSPIRACY GOES BACK THAT FAR.

10             AND THE COURT HAS HEARD TESTIMONY THAT THE

11   REASON THAT THAT PLANE WAS STOPPED WAS BECAUSE THE FAA

12   SUSPECTED ILLEGAL ACTIVITY ON THAT PLANE.

13             YOUR HONOR, ALTHOUGH THE COURT COULD -- THE

14   GOVERNMENT COULD REST ON ITS PRESUMPTION THAT MICHAEL

15   WHITE, WHO ADMITTED HIS TRUE NAME IS IN FACT THE MICHAEL

16   WHITE CHARGED IN THE ARIZONA INDICTMENT, IT HAS SUBMITTED

17   SUFFICIENT EVIDENCE AND MORE THAN ENOUGH EVIDENCE TO PROVE

18   THAT THERE'S PROBABLE CAUSE TO BELIEVE THAT A CRIME WAS

19   COMMITTED IN ARIZONA AND THAT THE DEFENDANT COMMITTED THAT

20   CRIME, AND THE DEFENDANT IS MICHAEL WHITE.

21             AND WITH THAT, YOUR HONOR, AND IF THE COURT HAS

22   QUESTIONS, I WOULD SUBMIT.

23             THE COURT:  ALL RIGHT, THANK YOU.  MR. SEVERO.

24             MR. SEVERO:  THANK YOU, YOUR HONOR.

25             THE GOVERNMENT CERTAINLY HAS PUT ON SOME

59

1    EVIDENCE CONCERNING MR. MICHAEL WHITE AT 200 NORTH

2    GLENDORA AVENUE.  I AGREE WITH THAT.  IF THAT WERE THE

3    ISSUE, I THINK THE COURT WOULD HAVE AN EASY TASK.  BUT

4    THAT'S NOT THE QUESTION.  THE QUESTION IS WHETHER THE

5    INDIVIDUAL INDICTED IN ARIZONA IS THE SAME INDIVIDUAL

6    BEFORE THE COURT.

7            NOW, THE GOVERNMENT WOULD LIKE YOU TO BELIEVE

8    THAT THERE WAS A PRESUMPTION THAT ARISES OUT OF THE

9    IDENTITY OF NAMES.  THE FACT THAT THE TWO NAMES, THE

10   MICHAEL WHITE IN THE INDICTMENT AND THE MICHAEL WHITE

11   BEFORE THE COURT, WOULD RAISE A PRESUMPTION THAT THEY ARE

12   ONE AND THE SAME PERSON.  BUT THAT'S NOT WHAT THE CASE LAW

13   SAYS.

14           CASE LAW SAYS THAT THERE'S AN INFERENCE THAT THE

15   COURT MAY DRAW, AND FAIR ENOUGH.  THERE IS AN INFERENCE

16   THAT MAY BE DRAWN FROM THE FACT THAT TWO NAMES THAT ARE

17   THE SAME COULD BELONG TO THE SAME PERSON.  YOU HAVE THAT

18   INFERENCE.

19           BUT THE PROBLEM IS THAT WHAT'S SET FORTH IN THE

20   COMPLAINT HAS NOT TOUCHED THE PERSON BEFORE THIS COURT.

21   FOR EXAMPLE, GOVERNMENT MAKES A BIG DEAL OUT OF THE FACT

22   THAT A MICHAEL WHITE AT 200 NORTH GLENDORA AVENUE WAS THE

23   REGISTERED OWNER OF A LAMBORGHINI.  BUT IF YOU LOOK AT THE

24   INDICTMENT, AT PAGE -- PARTICULARLY AT PAGE FIVE, VEHICLES

25   THAT ARE BEING SOUGHT TO BE FORFEITED, IN THIS CASE OUT OF

60

1  ARIZONA, THERE IS NO MENTION OF A LAMBORGHINI.  SO THE

2  LAMBORGHINI MAY HAVE BEEN REGISTERED TO MR. WHITE --

3          THE COURT:  IS THAT IN PARAGRAPH B?

4          MR. SEVERO:  YES, SIR.

5          THE COURT:  THAT WOULD BE BLACKED OUT IN MY COPY

6  OF THE INDICTMENT.

7          MR. SEVERO:  OH, OKAY.  MAY I --

8          THE COURT:  WELL, I'LL ASSUME THAT YOU'RE

9  CORRECT.  MR. TRUTANICH, YOU AGREE?  THERE'S NO LISTING OF

10  THE LAMBORGHINI IN PARAGRAPH 5, 3B, PAGE FIVE.

11          MR. TRUTANICH:  THAT'S CORRECT, YOUR HONOR.

12          THE COURT:  OKAY.

13          MR. SEVERO:  THE GOVERNMENT WOULD HAVE YOU

14  BELIEVE THAT EXHIBIT A HAS SOME FORCE.  IT HAS SOME FORCE.

15  IT HAS A NAME -- THE NAME OF MICHAEL WHITE, WITH A 200

16  NORTH GLENDORA ADDRESS.  YOU HAVE NO EVIDENCE AS TO HOW

17  THAT NAME GOT THERE, BECAUSE AS YOU RECALL FROM THE CROSS

18  EXAMINATION OF AGENT BELL, THE PERSON FROM WHOM HE

19  RECEIVED THIS INFORMATION COULDN'T REMEMBER HOW HE

20  IDENTIFIED THAT PERSON.

21          MOREOVER, THAT PLANE WAS STOPPED -- AND COUNSEL

22  WAS VERY CAREFUL TO SAY THAT IT WAS STOPPED FOR -- ON

23  SUSPICION OF ILLEGAL ACTIVITY.  ACTUALLY, THE REPORT THAT

24  YOU ADMITTED INTO EVIDENCE SHOWS THAT IT WAS STOPPED

25  BECAUSE OF SUSPICION OF VIOLATION OF THE WHITE SLAVE

61

1    TRAFFIC ACT.

2            CERTAINLY NOT ANYTHING HAVING TO DO WITH THIS

3    INDICTMENT IN THIS CASE, AND THIS INDIVIDUAL THAT WAS

4    INDICTED IN ARIZONA WAS INDICTED ON DRUG CHARGES.  THE

5    WHITE SLAVE TRAFFIC ACT HAD NOTHING TO DO WITH THIS.  NOR

6    DO WE KNOW WHO WAS THIS GENERO HIGGINS.  AGAIN, THERE'S

7    IDENTITY OF -- OR CERTAINLY THOSE TWO NAMES RESEMBLE EACH

8    OTHER; THE ONE ON THE INDICTMENT AND THE ONE THAT WAS

9    REFERRED TO IN EXHIBIT 8.  BUT THERE IS NO INDICATION THAT

10   THE ASSOCIATION WITH GENERO HIGGINS ALSO GAVE RISE TO ANY

11   CONSPIRACY TO POSSESS DRUGS WITH INTENT TO DISTRIBUTE THEM

12   BETWEEN 2003 AND 2010.  AGENT BELL WAS UNABLE TO TELL US,

13   BECAUSE HE WASN'T PART OF THE INVESTIGATION AS TO HOW THE

14   GOVERNMENT FEELS THAT THIS INDIVIDUAL THAT IS INDICTED IN

15   THIS -- IN ARIZONA COULD BE THE SAME PERSON THAT'S BEFORE

16   THE COURT.

17           SO IT BOILS DOWN TO, SHORT OF A NAME AND NOT AN

18   UNUSUAL ONE, MICHAEL WHITE AND A MONIKER "SKIP", YOU HAVE

19   NOTHING ELSE.  WHAT YOU HAVE IS A NAME, MICHAEL WHITE, ON

20   THIS INDICTMENT, WITH SOME EVIDENCE -- A FAIR AMOUNT OF

21   EVIDENCE -- THAT THERE IS A MICHAEL WHITE BEFORE THE

22   COURT, WHO MAY ALSO BE KNOWN AS SKIP.  THAT'S IT.  THAT'S

23   YOUR EVIDENCE.

24           AND I SUBMIT TO THE COURT THAT BASED ON THAT YOU

25   CANNOT CONCLUDE UNDER ANY STANDARD THAT THE MICHAEL WHITE

                                                          62

1   IN THIS INDICTMENT IS THE SAME MICHAEL WHITE THAT'S BEFORE

2   THE COURT.  THANK YOU.

3              THE COURT:  MR. TRUTANICH?

4              MR. TRUTANICH:  YES, YOUR HONOR.  THANK YOU.

5              YOUR HONOR, READING FROM PAGE TWO OF THE COPY OF

6   THE CHARLIE WONG CASE IN FRONT OF THE COURT -- EXCUSE ME,

7   PAGE THREE OF THREE, THE LAST PARAGRAPH STATES, "WE CANNOT

8   SAY" -- THE LAST LINE OF THE LAST PARAGRAPH STATES, "WE

9   CANNOT SAY AS A MATTER OF LAW THAT THIS INFERENCE IS

10  REBUTTED BY PETITIONER'S TESTIMONY THAT HE IS NOT THE

11  PARTY NAMED IN THE INDICTMENT."

12             IN THIS CASE, THE DEFENDANT HASN'T TESTIFIED

13  THAT HE'S NOT THE PARTY NAMED IN THE INDICTMENT.  THERE IS

14  NO EVIDENCE THAT THE DEFENDANT IS NOT THE PARTY NAMED IN

15  THE INDICTMENT.

16             TO THE CONTRARY, THE COURT HAS HEARD TESTIMONY

17  ABOUT FINGERPRINT EVIDENCE FROM THE FBI.  THE COURT HAS

18  ALSO HEARD ABOUT CONFIDENTIAL INFORMANTS THAT HAD

19  IDENTIFIED THE PICTURE IN EXHIBIT 3, WHICH IS ALSO THE

20  PICTURE IN EXHIBIT 7, AND ALSO THE PICTURE IN EXHIBIT 1 --

21  HAS IDENTIFIED THE PICTURE IN EXHIBIT 3 AS MICHAEL WHITE

22  AND AS A PERSON THAT PARTICIPATED IN NARCOTICS TRAFFICKING

23  WITH THE CONFIDENTIAL SOURCES.

24             THE COURT HAS THAT EVIDENCE AND IT HAS EVIDENCE

25  THAT THE DEFENDANT -- THE DEFENDANT HAS MULTIPLE

63

1    RESIDENCES, MULTIPLE NAMES, HAS BEEN CONVICTED OF

2    PROVIDING MULTIPLE NAMES, AND HAS SPECIAL AGENT BELL'S

3    TESTIMONY THAT THAT IS INDICATIVE OF NARCOTICS

4    TRAFFICKING.

5         BUT, YOUR HONOR, THE DEFENDANT WOULD LIKE YOU TO

6    BELIEVE --

7         THE COURT:  HE SAID IT WAS CONSISTENT WITH

8    NARCOTICS TRAFFICKING.

9         MR. TRUTANICH:  YES, YOUR HONOR, THAT'S CORRECT.

10        THE COURT:  THAT'S NOT NECESSARILY THE SAME

11   THING; RIGHT?

12        MR. TRUTANICH:  I  BELIEVE THAT'S CORRECT.  IT

13   COULD BE CONSISTENT WITH OTHER CRIMINAL ACTIVITY AS WELL.

14   IN THIS CASE, HOWEVER, YOUR HONOR, THAT EVIDENCE COUPLED

15   WITH THE CONFIDENTIAL INFORMANT'S STATEMENTS TO SPECIAL

16   AGENT ROBERTS, WHO TOLD SPECIAL AGENT BELL THAT

17   INFORMATION, AND SPECIAL AGENT BELL REVIEWING THOSE

18   REPORTS, AS WELL AS THE FACT THAT EXHIBIT NO. 2, WHICH IS

19   THE HERTZ CLUB CARD -- IF THE COURT REMEMBERS, THERE WAS

20   TESTIMONY ELICITED THAT EXHIBIT NO. 2 WAS FOUND AMONGST

21   THOUSANDS OF DOLLARS AND HUNDREDS OF POUNDS OF MARIJUANA.

22   AND THAT SPECIAL AGENT ROBERTS, THROUGH HER INVESTIGATION

23   INTO THIS CASE, SUBPOENAED RECORDS FROM HERTZ.  WHEN SHE

24   SUBPOENAED RECORDS FROM HERTZ, THE INFORMATION THAT SHE

25   RECEIVED BACK WAS THAT THERE WAS A MICHAEL WHITE, WHO WAS

                                                    64

1    THE OWNER OF THIS CARD AND THAT HE LIVED -- OR HE HAD AN

2    ADDRESS OF 200 NORTH GLENDORA AVENUE, THE SAME ADDRESS

3    THAT THIS PERSON SITTING AT COUNSEL TABLE TOLD MR. BELL

4    WAS HIS FATHER.  THE SAME PERSON THAT EVERY -- THAT MANY

5    ID'S THAT DEFENDANT HAS POSSESSED AND MANY PAPERS THAT

6    DEFENDANT HAS POSSESSED, AND THE EVIDENCE BEFORE THE COURT

7    SHOWS IS THE DEFENDANT'S ADDRESS.

8            SO FOR THAT REASON, YOUR HONOR, THERE ARE

9    SEVERAL OTHER INFERENCES AND SEVERAL OTHER PIECES OF

10   INFORMATION LINKING THE DEFENDANT -- LINKING THE PERSON IN

11   COURT TODAY TO THE DEFENDANT NAMED IN THE INDICTMENT;

12   MICHAEL LEE WHITE, WHO ANSWERED TO THE NAME SKIP WHEN HE

13   WAS ARRESTED.

14           YOUR HONOR, WITH THAT, THE GOVERNMENT WOULD

15   SUBMIT.

16           THE COURT:  ALL RIGHT.  THANK YOU.

17           ALL RIGHT.  MUCH OF THE EVIDENCE, I THINK, IS

18   TENUOUS AND OF ULTIMATELY LITTLE APPLICABILITY.  BUT THERE

19   IS, IN THE COURT'S VIEW, ENOUGH EVIDENCE TO MAKE A FINDING

20   HERE.

21           THERE IS IN FACT AN INFERENCE THAT ARISES FROM

22   THE IDENTIFICATION OF THE DEFENDANT.  THERE IS THE FURTHER

23   INFERENCE BUILDING ON THAT INFERENCE BY THE USE OF THE

24   MONIKER.  THERE IS THE IDENTIFICATION OF THE DEFENDANT'S

25   PICTURE.  AND TO A SLIGHTLY LESSER EXTENT, THE TIE-IN

                                                          65

1    THROUGH THE HERTZ CREDIT CARD.  THE INFORMATION ABOUT THE

2    CARS AND THE INFORMATION ABOUT THE PLANE AND THINGS OF

3    THAT IS ALL KIND OF INTERESTING, BUT I DON'T THINK IT'S

4    ALL THAT GERMANE.

5           BUT THE OTHER INFORMATION, THE COURT BELIEVES IS

6    SUFFICIENT FOR THE COURT TO MAKE IT'S RULING.  AND THE

7    COURT DOES FIND THAT THE DEFENDANT BEFORE THE COURT,

8    IDENTIFIED AS MICHAEL LEE WHITE, IS THE DEFENDANT NAMED IN

9    THE INDICTMENT FROM ARIZONA.

10          THEREFORE, THE DEFENDANT IS ORDERED TO ANSWER

11   THE CHARGES IN THE INDICTMENT FROM THE DISTRICT OF

12   ARIZONA.  HE HAS PREVIOUSLY BEEN ORDERED DETAINED.  HE IS,

13   THEREFORE, REMANDED TO THE MARSHALL, AND THE MARSHALL IS

14   DIRECTED TO TRANSPORT HIM TO THE DISTRICT OF ARIZONA TO

15   ANSWER THE CHARGES IN THE INDICTMENT.

16          MR. SEVERO:  THANK YOU, YOUR HONOR.

17          THE COURT:  ANYTHING FURTHER?

18          MR. SEVERO:  NOTHING FURTHER.  THANK YOU.

19          MR. TRUTANICH:  NOTHING FURTHER FROM THE

20   GOVERNMENT.

21          THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL BE IN

22   RECESS.

23              (END OF PROCEEDING.)

24

25

                                                          66

1          TRANSCRIPTIONIST CERTIFICATE

2

3          I, SHAUNE STEELE, DO HEREBY CERTIFY:

4          THAT THE FOREGOING AUDIOTAPED PROCEEDING WAS

5    RECEIVED AND TRANSCRIBED INTO TYPEWRITING UNDER MY

6    DIRECTION AND SUPERVISION;

7          AND I HEREBY CERTIFY THAT THE FOREGOING

8    TRANSCRIPT IS A FULL, TRUE AND CORRECT TRANSCRIPT OF THE

9    AUDIOTAPED RECORDING GIVEN TO ME.

10          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

11   NOR RELATED TO ANY PARTY TO SAID ACTION, NOR ANYWISE

12   INTERESTED IN THE OUTCOME THEREOF.

13          IN WITNESS THEREOF, I HAVE HEREUNTO SUBSCRIBED

14   MY NAME THIS 12TH DAY OF APRIL, 2011.

15

16

17          ___/S/_____

18          SHAUNE STEELE

19

20

21

22

23

24

25

                                                            67

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626) 792-6777 Transcription (626) 792-7250